Rule 23 order filed
 NO. 5-03-0753

June 30, 2005;

Motion to publish granted
 IN THE

August 24, 2005.

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

JOSEPH E. HAYES, )  Appeal from the 

)  Circuit Court of 

Plaintiff-Appellant, )  St. Clair County.

)

v. )  No. 02-MR-57  

)

STATE TEACHER CERTIFICATION )

BOARD and STATE )

SUPERINTENDENT OF EDUCATION, )  Honorable

)  Richard A. Aguirre, 

Defendants-Appellees. )  Judge, presiding.

___________________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiff, Joseph E. Hayes, filed a complaint in the circuit court of St. Clair County for the judicial review of an order by the State Teacher Certification Board affirming the five-year suspension of his teaching and administrative certificates for engaging in immoral conduct.  For the reasons that follow, we affirm the State Teacher Certification Board's order.  

I. BACKGROUND 

This action arose from Hayes' sexual contact with a seventh grade student at Rock Junior High School in East St. Louis, where he was an assistant principal.  In the spring of of 1985, Hayes had sex with M.Q.
(footnote: 1), then 14 years old, which resulted in the birth of her son, C.Q.  This conduct precipitated one criminal trial, an employment-dismissal proceeding, a paternity action, and a certificate-suspension action.  These proceedings have transpired over the past 19 years and have resulted in a voluminous record.

On appeal, Hayes, 
pro se
, raises a number of issues involving concepts of 
res judicata
, collateral estoppel, and 
laches
, which require our consideration of various aspects of the foregoing proceedings.  The essence of his appeal is that the State Superintendent of Education (the State Superintendent) should be barred from suspending his certificates 12 years after a hearing officer, in an employment-dismissal proceeding, reinstated him to his former position.  Our resolution of the issues presented does not require a detailed account of the evidence in the record.  However, given the overlapping nature of the proceedings involved, we set forth a time line of the most pertinent events and significant facts below to facilitate our review and discussion.

March 1985: Hayes engages in sexual contact with M.Q.

January 1986: M.Q. gives birth to a son.

July 1986: Hayes submits to a blood test to determine paternity.  The results reflect the cumulative paternity index is 13,828, and the relative chance of paternity is 99.99%.  

September 1986: Hayes is dismissed from his employment with the East St. Louis School District No. 189 (District 189) pursuant to section 24-12 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24-12) amidst sex charges, and Hayes appeals.

October 1986: Hayes is charged with aggravated criminal sexual assault in St. Clair County with regard to sexual contact with M.Q.

November 1986: M.Q. files a paternity action in the circuit court of St. Clair County against Hayes under section 7 of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1985, ch. 40, par. 2507).  

June 1988: A jury finds Hayes not guilty on the sexual-assault charges.  

September 1988: A circuit court judge "closes" the paternity action for lack of activity.

November 1988: Hearing officer Cornelius McAuliffe conducts a four-day hearing of Hayes' appeal of his employment dismissal under section 24-12.  (This hearing had been postponed pending the resolution of Hayes' criminal trial.)

January 1989: Hearing officer McAuliffe finds that District 189 failed to prove by a preponderance of the evidence that Hayes engaged in sexual contact with M.Q., and he reinstates Hayes to his former position, with back pay and benefits.  He found the paternity blood test and polygraph evidence to be only minimally probative, and he reinstated Hayes based primarily on the fact that Hayes had consistently denied the accusations of sexual contact and M.Q. had given inconsistent statements over the years.  

February 1989: District 189 files in the circuit court of St. Clair County a complaint for the judicial review of Hayes' reinstatement.  

February 1991: The circuit court of St. Clair County affirms Hayes' reinstatement to employment.  District 189 appeals.  

December 1992: This court affirms the circuit court's judgment in the employment- dismissal action.  
East St. Louis School District No. 189 v. Hayes
, 237 Ill. App. 3d 638, 604 N.E.2d 557 (1992).  

August 1997: M.Q. succeeds in reopening the paternity action.

1998: Hayes submits to a court-ordered DNA test in the paternity action, the results of which do not exclude him as the father and indicate a probability of paternity of 99.90% and a combined paternity index of 974 to 1.  

August 1999: In the paternity action, the circuit court of St. Clair County sustains M.Q.'s motion for a summary judgment on the question of paternity and finds that Hayes is the father of M.Q.'s son, and it orders the payment of both retroactive and continuing child support.  

August 1999: The State Superintendent filed a notice of opportunity for hearing seeking to suspend Hayes' teaching and administrative certificates for five years for immoral conduct, pursuant to section 21-23 of the School Code (105 ILCS 5/21-23 (West 1998)).  The conduct cited is sexual contact with M.Q. resulting in a birth and evidenced by the 1998 DNA test.  Hayes requests a hearing.  

December 1999: Hearing officer Roger David denies Hayes' motion to dismiss the certificate-suspension proceeding and enters a substantial ruling denying Hayes' charges of 
res judicata 
and collateral estoppel.  

September 2002: This court affirms the circuit court of St. Clair County's entry of a summary judgment in M.Q.'s favor in the paternity action.  
M.Q. v. Hayes
, No. 5-01-0593 (2002) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)).

September 2000: Hearing officer David hears the State Superintendent's certificate-suspension case against Hayes under section 21-23 of the School Code. 

January 2001: Hearing officer David issues his recommended findings and opinion in the certificate-suspension proceeding, finding that the State  Superintendent proved by a preponderance of the evidence that Hayes engaged in immoral conduct and recommending that his certificates be suspended for five years.  Unlike McAuliffe, David afforded M.Q.'s testimony more weight despite the inconsistencies in her prior statements.  He also had the benefit of the 1998 DNA genetic paternity results and an amended statutory structure allowing a rebuttable presumption of paternity.  Also of importance to David in his recommendation of suspension was his observation of Hayes' demeanor during Hayes' counsel's examination regarding the charges. 

February 2001: Hearing officer David issues his final set of findings, opinions, and recommendations, rejecting Hayes' exceptions and proposed findings and adopting his January 2001 findings and opinion as his final recommendations as supplemented.  

July 2001: The State Superintendent adopts hearing officer David's final recommendations and suspends Hayes' Standard Secondary Certificate No. 1686665, Administrative (General) Certificate No. 967605, and Administrative (Superintendent) Certificate No. 1251490 for five years pursuant to section 21-23 of the School Code.  

February 2002: The State Teacher Certification Board adopts hearing officer David's final recommendations and affirms the State Superintendent's suspension order.  Hayes seeks judicial review pursuant to the Administrative Review Law (735 ILCS 5/3-101 
et seq
. (West 2002)). 

July 2003: The circuit court of St. Clair County affirms the administrative decision  suspending Hayes' certificates for five years, and it denies Hayes' subsequent motion to reconsider.  Hayes appeals to this court seeking a reversal of the administrative decision suspending his certificates.  

Two additional factors complicated the adjudication of these proceedings, and we mention them here for contextual purposes only, because they are not dispositive of the issues before us.  First, the field of paternity testing advanced from serologically based testing into DNA-based testing around 1986.  Second, the Illinois Parentage Act of 1986 was substantially amended over the years.  At the time of Hayes' reinstatement, the law was clear only with respect to excluding paternity based upon blood tests; however, by the time the summary judgment was entered in the paternity action, the law permitted a rebuttable presumption of paternity to be drawn if the test results showed that Hayes was not excluded and that the combined paternity index was at least 500 to 1 (750 ILCS 45/11(f)(4) (West 1998)).  

In sum, with regard to the same conduct, a jury adjudged Hayes not guilty of a sexual assault, and Hayes was reinstated to his position as assistant principal in a separate dismissal proceeding under section 24-12 of the School Code.  Subsequent to further and more advanced genetic testing, in the paternity action Hayes was declared the biological father of C.Q., which prompted the State Superintendent to seek the suspension of his teaching and administrative certificates under section 21-23 of the School Code. 

Hayes raises five arguments on appeal: (1) under the doctrine of 
res judicata
, the section 24-12 employment-dismissal proceeding brought by District 189 bars the State Superintendent from bringing the section 21-23 certificate-suspension action, (2) under the related doctrine of collateral estoppel, the State Superintendent in the certificate-suspension proceeding is bound by hearing officer McAuliffe's finding in the employment-dismissal proceeding–that District 189 failed to prove by a preponderance of the evidence that Hayes engaged in sexual contact with M.Q., (3) section 21-23a(a) of the School Code (105 ILCS 5/21-23a(a) (West 1998)) precludes the State Superintendent from suspending his certificates because he was acquitted on the sexual-assault charges, (4) the State Superintendent should be barred from suspending his certificate under the doctrine of 
laches
, and (5) hearing officer Roger David's factual findings and legal conclusions with regard to the 1998 DNA test were erroneous.  For the reasons that follow, we reject all of Hayes' contentions and affirm the order suspending his certificates.  

II. ANALYSIS

The statute governing the suspension of Hayes' certificates is section 21-23(a) of the Illinois School Code (105 ILCS 5/21-23(a) (West 1998)).  Section 21-23(a) provides that upon receiving evidence of immorality, the State Superintendent may suspend a teacher's certificates after notice and an opportunity for a hearing.  The legislature provided that the right of appeal in a certificate-suspension proceeding lies with the State Teacher Certification Board.  The provisions of the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 2004)) apply to this case pursuant to section 21-24 of the School Code (105 ILCS 5/21-24 (West 2004)).  

In reviewing a final decision under the Administrative Review Law, we review the administrative decision and not the circuit court's judgment.  
Metropolitan Water Reclamation District of Greater Chicago v. Department of Revenue
, 313 Ill. App. 3d 469, 474, 729 N.E.2d 924, 928-29 (2000).  We are to consider the administrative agency's findings of fact to be 
prima facie
 correct and must not reweigh the evidence or make independent factual findings.  735 ILCS 5/3-110 (West 2004); 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).  The appropriate standard of review, which determines our degree of deference, depends on whether the issue presented is one of fact, one of law, or a mixed question of fact and law.  
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 390, 763 N.E.2d 272, 279 (2001).  The issues presented involve all three, and we designate the appropriate standard of review with regard to each issue below.  We now turn to the merits of Hayes' case.  

Res Judicata 
and Collateral Estoppel

Hayes contends that 
res judicata 
bars the State Superintendent from suspending his certificates because the causes of action in the employment-dismissal and certificate-suspension proceedings are identical and because the parties in both proceedings are in privity with one another.  Hayes further contends that collateral estoppel bars the State Superintendent from litigating the issue of sexual contact with M.Q. in the certificate-suspension proceeding because a party in privity litigated the same issue in the earlier employment-dismissal action.  We disagree.  

We reject Hayes' contentions because hearing officer McAuliffe had no statutory authority to hear and recommend that Hayes' certificates be suspended under section 21-23 of the School Code.  Additionally, we find that the parties in both proceedings are not identical nor are they parties in privity.  Hayes' collateral estoppel claim fails for the same reasons, but additionally, we cannot say that the State Superintendent had a full and fair opportunity in the employment-dismissal action to litigate whether Hayes had engaged in sexual contact resulting in paternity.  The State Teacher Certification Board and the State Superintendent claim that these issues present questions of law.  We review questions of law 
de novo
.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995).  

Res judicata
 is separated into two distinct doctrines: (1) true 
res judicata
, which is known as "claim preclusion," and (2) collateral estoppel, which is known as "issue preclusion."  
People v. Moore
, 184 Ill. App. 3d 102, 104, 539 N.E.2d 1380, 1381 (1989), 
rev'd on other grounds
, 138 Ill. 2d 162, 561 N.E.2d 648 (1990).  Both branches serve the same purpose, that is, promoting judicial economy and preventing repetitive litigation, and both apply to administrative decisions that are adjudicatory, judicial, or quasi-judicial.  
Moore
, 184 Ill. App. 3d at 104, 539 N.E.2d at 1381; 
Arvia v. Madigan
, 209 Ill. 2d 520, 534, 809 N.E.2d 88, 97 (2004). 

Res judicata 
precludes a party from taking more than one bite out of the same apple.  The doctrine provides that a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a later action between the same parties or their privies involving the same claim, demand, or cause of action.  
Res judicata
 bars "all matters that were offered to sustain or defeat the claim in the first action, as well as all matters that could have been offered for that purpose."  
Arvia
, 209 Ill. 2d at 533, 809 N.E.2d at 97.  The doctrine promotes judicial economy by preventing repetitive litigation and protects litigants from having to relitigate the same issue or case.  
Arvia
, 209 Ill. 2d at 533, 809 N.E.2d at 97.  The party seeking to invoke the doctrine of 
res judicata
 bears the burden of proving that it applies.  
Cload v. West
, 328 Ill. App. 3d 946, 950, 767 N.E.2d 486, 490 (2002).  

Collateral estoppel applies when a party participates in two separate and consecutive cases arising out of different causes of action and some controlling factor or question material to the determination of both cases has been adjudicated by a court of competent jurisdiction against the party in the former suit.  
Stathis v. First Arlington National Bank
, 226 Ill. App. 3d 47, 53, 589 N.E.2d 625, 630 (1992).  The three requirements of collateral estoppel are as follows: (1) the issues in the cases are identical, (2) there is a final judgment on the merits, and (3) the party against whom an estoppel is asserted is a party or is in privity with a party to the prior adjudication.  
Illinois State Chamber of Commerce v. Pollution Control Board
, 78 Ill. 2d 1, 7, 398 N.E.2d 9, 12 (1979).  However, a prior judgment operates as an estoppel only regarding issues "
actually litigated and determined 
and not as to other matters which might have been litigated and determined."  (Emphasis in original.)  
Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.
, 189 Ill. App. 3d 638, 661, 545 N.E.2d 481, 496 (1989).  Moreover, the party against whom the estoppel is asserted must have had a full and fair opportunity to litigate the issue in the earlier action, and "an injustice must not be done to him under the circumstances of the later case."  
Stone v. Salvage & Bridges Agency, Inc.
, 206 Ill. App. 3d 615, 620, 565 N.E.2d 318, 321 (1990); 
Wolford v. Owens-Corning Fiberglas Corp.
, 176 Ill. App. 3d 312, 314, 530 N.E.2d 721, 722 (1988). 

In this case, the first element of 
res judicata 
is satisfied, but the remaining two elements are not.  The parties agree that there was a final judgment on the merits in the employment-dismissal action rendered by hearing officer McAuliffe pursuant to section 24-12 of the School Code.  McAuliffe's decision was affirmed by this court.  
East St. Louis School District No. 189 v. Hayes
, 237 Ill. App. 3d 638, 604 N.E.2d 557 (1992).  However, we reject Hayes' argument that the cause of action before McAuliffe (a section 24-12 employment dismissal) and the cause of action before David (a section 21-23 certificate suspension) are identical, and we endorse David's analysis of this element in his ruling denying Hayes' motion to dismiss, entered on December 29, 1999.  Therein, David explains that without further qualification, one might conclude, after applying various common law tests to the facts, that the causes of action were identical.  Notwithstanding, David concluded that 
res judicata 
did not apply to bar the certificate-suspension action because it could not have been litigated before McAuliffe in the employment-dismissal proceeding.  We agree.

Hearing officers selected by parties under sections 24-12 and 21-23 of the School Code are vested with specific authority to hear and decide different issues.  Section 24-12, in part, permits a school board to dismiss a teacher from employment in its district for cause.  If the teacher requests a hearing, section 24-12 provides that a disinterested hearing officer shall hold a hearing on the dismissal and render a final decision.  105 ILCS 5/24-12 (West 2004).  A hearing officer's opinions to uphold or deny an employment termination is final and reviewable under the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 2004)).  105 ILCS 5/24-16 (West 2004).  

In contrast, section 21-23 of the School Code permits, in part, the State Superintendent to suspend a teacher's administrative and teaching certificates for five years upon evidence of immorality.  The teacher must be afforded a hearing prior to the suspension.  If requested, the hearing officer's opinion to suspend or not suspend a certificate is not final.  Rather, the opinion is presented as a recommendation to the State Superintendent.  The right of appeal lies with the State Teacher Certification Board before proceeding to judicial review by the circuit court.  105 ILCS 5/21-23, 21-24 (West 2004). 

In light of this statutory framework, McAuliffe did not and could not hear and decide whether Hayes' certificates should be suspended.  To interpret this statutory scheme as requiring both certificate-suspension and employment-dismissal proceedings to be brought or heard together and before the same hearing officer would result in granting authority and creating restrictions "not suggested by the language of the statute and would be at odds with the overall structure of the [School] Code" (
Trigg v. Sanders
, 162 Ill. App. 3d 719, 728, 515 N.E.2d 1367, 1373 (1987)).  Therefore, we find that the certification-suspension action under section 21-23 does not qualify as a "relitigation" of the same cause of action for the purpose of 
res judicata
.  See 
Arvia v. Madigan
, 209 Ill. 2d 520, 534, 809 N.E.2d 88, 97 (2004) (the supreme court held that 
res judicata 
did not bar a driver's declaratory judgment action because the Secretary of State did not decide and could not have decided the driver's constitutional claim in an earlier license-suspension action).  Accordingly, we conclude that 
res judicata
 does not apply to bar the certificate-suspension action because it could not have been litigated before McAuliffe in the employment-dismissal proceeding.  

Additionally, 
res judicata 
does not bar the certificate-suspension proceeding because the parties in both proceedings are not identical nor are they in privity with one another.  District 189 prosecuted the section 24-12 employment-dismissal action against Hayes.  However, "Illinois State Board of Education" (ISBE) appears on the top of hearing officer McAuliffe's 1989 decision.  The parties in the instant case are Hayes and the State Superintendent.  Hayes attempts to demonstrate privity by aligning the interests of the State Superintendent in the suspension proceeding to the ISBE, which played a neutral role in the employment-dismissal action.  Hearing officer David rejected this contention, as do we, and we find that the ISBE was not an interested party in Hayes' employment termination.  

There is no generally prevailing definition of "privity" that we can apply to all cases for the purpose of 
res judicata
.  Rather, determining privity requires careful consideration of the circumstances of each case.  "Privity expresses 'the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties.'  [Citation.]"  
Purmal v. Robert N. Wadington & Associates
, 354 Ill. App. 3d 715, 722-23, 820 N.E.2d 86, 94-95 (2004).  To be bound to a prior adjudication, a nonparty's interests must be so closely aligned to those of a party that the party is the "virtual representative of that nonparty."  
Purmal
, 354 Ill. App. 3d at 723, 820 N.E.2d at 95.  

Section 24-12 of the the School Code requires the ISBE to perform certain neutral and ministerial functions with regard to employment-dismissal proceedings brought by school districts.  105 ILCS 5/24-12 (West 2004).  We have reviewed the statute and confirm hearing officer David's December 29, 1999, finding: "[N]one of the discretionary functions assigned to the ISBE by that Section would require or permit this agency to become an adversarial or interested party in a case between a local school board and any of its certificated employees."  We also endorse David's view that even if the ISBE were regarded as a party in the dismissal action, the 
res judicata
 requirement of identity of parties or their privies would still not be met.  This is so, notwithstanding the reporting relationship between the ISBE and the State Superintendent, because we find that they do not share a sufficient identity of interests.  In arriving at this conclusion, David examined the entities' interests and concluded that the interests of the State Superintendent, "when acting with respect to an action potentially reviewed [
sic
] by the State Teacher Certification Board, are [not] always and necessarily the same as the collective views and interests of the nine members of the State Board of Education."  Accordingly, we find that 
res judicata 
does not apply to preclude the State Superintendent from suspending Hayes' certificates pursuant to section 21-23 of the School Code.    

As with 
res judicata 
above, at first glance the facts appear to satisfy the elements of collateral estoppel.  However, with further qualification, we find that collateral estoppel does not apply because the State Superintendent (the complainant in the certificate-suspension action) was not a party in privity, and as a result it did not have a full and fair opportunity to litigate Hayes' sexual contact with M.Q. or his paternity in the employment-dismissal action.  We need not reiterate our analysis on privity here; however, we emphasize the rule that collateral estoppel only applies to bar the relitigation of an issue in a subsequent case when a party in privity actually litigates the issue in the earlier proceeding to advance its own interests.  See 
Fred Olson Motor Service v. Container Corp. of America
, 81 Ill. App. 3d 825, 830, 401 N.E.2d 1098, 1101 (1980).  This certainly did not occur in this case.  District 189's interests in the employment-dismissal proceeding were to investigate and remove a potentially harmful member of the administration from employment to protect the students at Rock Junior High School.  The State Superintendent's interest in the section 21-23 proceeding was to suspend Hayes' certificates, thereby preventing his employment statewide, to protect the well-being of the public by ensuring "that the occupation will be practiced with honesty and integrity and by excluding those who are incompetent or unworthy" (
Trigg v. Sanders
, 162 Ill. App. 3d 719, 727, 515 N.E.2d 1367, 1373 (1987)).  Thus, because the State Superintendent's interests were not represented in the employment-dismissal proceeding, the determination made therein that District 189 failed to prove by a preponderance of the evidence that Hayes had engaged in sexual contact with M.Q. should not be binding on the State Superintendent in the instant case.  

For the foregoing reasons, we conclude that neither 
res judicata 
nor collateral estoppel bars the certificate-suspension proceeding under section 21-23 of the School Code. 

Hayes' Acquittal and Section 21-23a(a) of the School Code

Hayes next contends that section 21-23a(a) of the School Code (105 ILCS 5/21-23a(a) (West 1998)) precludes the State Superintendent from suspending his administrative and teaching certificates, because a jury acquitted him of criminal charges based on the same underlying conduct.  Hayes' argument is wholly without merit.

Although a court of review is not bound by an administrative agency's interpretation of a statute, courts will substantially defer to an interpretation by an agency charged with administering and enforcing the statute.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 97-98, 606 N.E.2d 1111, 1121 (1992); 
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 395, 763 N.E.2d 272, 281 (2001).  "Such an interpretation expresses an informed source for ascertaining the legislative intent."  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 98, 606 N.E.2d 1111, 1121 (1992). 

Section 21-23a(a) requires the State Superintendent to suspend a holder's certificate whenever he has been 
convicted
 of any sex or narcotics offense defined in the statute.  However, if the conviction is subsequently reversed and the holder is acquitted of the offense in a new trial or the charges are dismissed, the State Superintendent must terminate the certificate-suspension proceeding.  105 ILCS 5/21-23a(a) (West 2004).  Here, Hayes was not convicted, so section 21-23a(a) never comes into play.  Indeed, section 21-23a is silent on the question of whether the State Superintendent may proceed to suspend certificates under section 21-23 when there has been only an acquittal.  

In this case, the State Superintendent initiated the suspension of Hayes' certificates after DNA evidence revealed paternity, as concluded by the circuit court in the paternity action.  The mere fact of his acquittal did not divest the State Superintendent of his discretion and authority under section 21-23 to initiate suspension proceedings upon the receipt of evidence of immorality.  Hayes' acquittal did not eliminate the underlying conduct, nor did it require the State Superintendent to ignore information concerning Hayes' sexual contact with M.Q. and paternity that became available from other sources, 
i.e.
, the 1998 DNA test and the circuit court judgment in the paternity action.  See, 
e.g.
, 2001 Ill. Att'y Gen. Op. 009 (an opinion discussing the effect of a pardon following a certificate revocation under section 21-23a).  

Moreover, Hayes' argument fails for the additional reason that the State Superintendent's standard of proof under section 21-23a is much less stringent than the State's burden was in his criminal case.  The standard of proof under section 21-23a is the preponderance-of-the-evidence standard, and not the beyond-a-reasonable-doubt standard.  5 ILCS 100/10-15 (West 2004).  Thus, it is quite possible that the jury believed that Hayes might have committed a sexual assault but acquitted him because its belief was not supported by proof beyond a reasonable doubt.  Furthermore, the State Superintendent may act to suspend a certificate upon evidence of misconduct that does not rise to the level of criminality.  105 ILCS 5/21-23 (West 2004).  We agree with hearing officer David that it follows that the State Superintendent pursuing a suspension under section 21-23 of the School Code should not be bound by an acquittal in a related criminal action.  

Laches

Hayes next raises what appears to be a hybrid statute-of-limitation and 
laches
 argument.  He contends that the State Superintendent knew about the charges against him for many years before seeking to suspend his certificates and essentially waited too long to act.  Next, he again resorts to section 21-23a(a) of the School Code (105 ILCS 5/21-23a(a) (West 2004)) and section 12-13 of the Criminal Code of 1961 (720 ILCS 5/12-13 (West 2004)) to craft a statute of limitation applicable to section 21-23 of the School Code.  We reject Hayes' arguments.  

Laches
 is an equitable principle that bars relief to a party whose unreasonable delay in bringing an action for relief prejudices the rights of the other party.
  People ex rel. Daley v. Strayhorn
, 121 Ill. 2d 470, 482, 521 N.E.2d 864, 869 (1988).  Whether 
laches
 applies depends on the unique facts and circumstances of a particular case.  The party seeking to prove 
laches
 must show more than a mere passage of time; the party must show that there was an unreasonable delay in bringing an action and that the delay materially prejudiced the party.  
Hannigan v. Hoffmeister
, 240 Ill. App. 3d 1065, 1074, 608 N.E.2d 396, 403 (1992).  Moreover, unless extraordinary circumstances are present, the doctrine is applied sparingly to public bodies.  This determination is at the discretion of the fact finder, and we will not disturb a decision on review unless we find an abuse of discretion.  
Hannigan
, 240 Ill. App. 3d at 1074, 608 N.E.2d at 403.  

The 1998 DNA test results, relied on by the circuit court in declaring Hayes to be the father of M.Q.'s son, represented "evidence of immorality" permitting the State Superintendent to initiate the suspension proceeding.  The circuit court entered a judgment in favor of M.Q. in the paternity action on August 3, 1999.  Six days later the State Superintendent filed the notice of an opportunity for a hearing under section 21-23 of the School Code.  We find no unreasonable delay in bringing the certificate-suspension action on these facts.  Moreover, the record is void of any evidence which would tend to show that Hayes was prejudiced by the alleged delay.  

We also reject Hayes' statute-of-limitation argument.  The legislature did not provide an express limitation period for certificate-suspension actions.  Rather, the statute states that any certificate may be suspended by the State Superintendent upon a receipt of evidence of immorality.  The only limitation language found in the statute states that the State Superintendent must serve written notice to the individual "upon receipt of evidence of immorality."  105 ILCS 5/21-23(a) (West 2004).  This does not operate to time-bar the proceeding in the manner suggested by Hayes, especially where the State Superintendent initiated suspension proceedings within the same month as the circuit court adjudged Hayes to be the father of M.Q.'s son.  Furthermore, while the Illinois Criminal Code of 1961 provides that criminal-sexual-assault prosecutions must be brought within a prescribed period of time (720 ILCS 5/12-13, 3-6(d) (West 2004)), no statutory provision links a certificate-suspension action under section 21-23 of the School Code with any statute of limitation set forth in the Criminal Code of 1961.  We find that neither the doctrine of 
laches
 nor the limitation period suggested by Hayes precludes the State Superintendent's ability to suspend Hayes' certificates in this case. 

Hayes' 1998 DNA Test

Hayes' final argument on appeal is that the paternity index of 974, calculated by one of the State Superintendent's DNA experts, is higher than it should be due to an incorrect calculation.  Hayes challenges the weight hearing officer David afforded the experts' testimony and essentially asks us to substitute our judgment for the agency's.   

In reviewing a final decision under the Administrative Review Law, we are to consider the administrative agency's findings of fact to be 
prima facie
 correct, and we must not reweigh the evidence or make independent factual findings.  735 ILCS 5/3-110 (West 2004); 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).  It is the circuit court's task to judge whether the agency's decisions on questions of fact are against the manifest weight of the evidence.  
McLean v. Department of Revenue
, 326 Ill. App. 3d 667, 673, 761 N.E.2d 226, 232 (2001).  An administrative decision is against the manifest weight of the evidence only when the opposite conclusion is clearly evident.  On review, we should affirm the agency's decision if the evidence in the record supports the agency's decision.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992); 
Bevis v. Pollution Control Board
, 289 Ill. App. 3d 432, 435, 681 N.E.2d 1096, 1098-99 (1997).  

Our resolution of this issue requires reference to the Illinois Parentage Act of 1984 (the Parentage Act) (750 ILCS 45/1 
et seq.
 (West 2004)) and a very brief overview of some of the DNA experts' testimony considered by hearing officer Roger David.  Section 11 of the Parentage Act provides that if DNA tests taken pursuant to that section show that the alleged father is not excluded and that the combined paternity index is at least 500 to 1, he is presumed to be the father, rebuttable only by clear and convincing evidence.  750 ILCS 45/11(f)(4) (West 2004).  In cases where the combined paternity index is less than 500 to 1, the evidence is still admitted and is weighed with other competent evidence of paternity.  750 ILCS 45/11(f)(3) (West 2004).  In his prehearing rulings, David admitted the 1998 DNA test report into evidence and gave it a presumptive effect in a manner consistent with section 11(f)(4) of the Parentage Act (750 ILCS 45/11(f)(4) (West 1998)).  

At the hearing, the State Superintendent put on two DNA experts–Ruth Koester, Ph.D. (laboratory director for LabCorp, which performed the 1998 DNA testing), and Robert Allen, Ph.D.  Michael Baird, Ph.D., testified for Hayes.  Koester testified that the 1998 DNA test produced a combined paternity index of 974 to 1 (a number sufficiently high to raise the presumption of paternity under section 11(f)(4) of the Parentage Act).  According to Koester, calculations associated with the test reflected that the probability of Hayes' paternity is 99.90%, as compared to an untested, unrelated man of the black population.  

LabCorp tested 13 "systems" or "loci" and arrived at a paternity index for each one  tested.  It arrived at an overall paternity index of 974 by multiplying the individual indices of each system.  Dr. Baird, Hayes' expert, testified that he believed that LabCorp used a number that was too high in making a particular calculation with regard to one of the systems.  His calculation, using a value he felt was more appropriate, resulted in a lower  combined paternity index of 207.  David acknowledged that had Dr. Koester used the rate suggested by Dr. Baird, a lower combined paternity index would have resulted; however, in his final set of findings, David stated that an "insufficient basis exists for concluding that there is mathematical or other incompetence at LabCorp."  David found that this was due in part to the ample number of systems tested and Dr. Baird's testimony that it was highly unlikely that error occurred in the testing process sufficient to result in a false showing of paternity.

Hayes contends that if his expert's opinions were to be accepted as correct and the overall index was recalculated using the different value, the combined paternity index would be below 500 and the presumption of paternity would not arise under the Parentage Act.  Hayes essentially asks us to make findings independent of the agency's and to substitute our judgment for David's recommendations and opinions.  We decline to do so because we must consider David's findings of fact to be 
prima facie
 correct and not reweigh the evidence.  735 ILCS 5/3-110 (West 2004); 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).  Regardless, Hayes' issue is moot in light of David's proposed "alternate analysis" of the facts in his initial and final set of recommended findings and opinions.  David noted that had LabCorp arrived at an index of less than 500, he would have weighed it with other competent evidence of paternity pursuant to section 11(f)(3) of the Parentage Act (750 ILCS 45/11(f)(3) (West 2000)) and would have still concluded by a clear preponderance of the evidence that Hayes fathered M.Q.'s child.  Having reviewed the record in its entirety, we find that sufficient evidence exists to support David's findings and opinion, including his alternate analysis.  The 1986 blood test results indicate that the relative chance of Hayes' paternity of C.Q. is 99.99%, with a combined paternity index of 13,828.  None of the experts in this proceeding questioned the results of the 1986 blood test or calculations associated with the test, which represented competent evidence in this case.  All the experts who testified, including Hayes' own witness, agreed that the 1986 and 1998 test results created a very high probability that Hayes was C.Q.'s father.  This evidence, in addition to the nongenetic evidence, including witness testimony, which we do not recount here, provides overwhelming support for the agency's recommendations, findings, and opinions. 

III. CONCLUSION

Accordingly, we affirm the order of the State Teacher Certification Board, suspending Joseph E. Hayes' teaching and administrative certificates for five years.  

Affirmed.  

HOPKINS and KUEHN, JJ., concur.

FOOTNOTES
1:
We find that no useful purpose would be served in this order by using the actual names of the former student and her child.