NOTICE

Decision filed 11/05/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190296-U

NO. 5-19-0296

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| KENT PURCHASE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Pulaski County. |
| | ) | |
| v. | ) | No. 14-SC-58 |
| | ) | |
| SHAWNEE COMMUNITY COLLEGE, | ) | Honorable |
| | ) | William J. Thurston, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm the trial court's grant of defendant's motion for summary judgment where it was not required to consider an untimely filed affidavit attached to plaintiff's motion to reconsider and there was no material issue of genuine fact.

¶ 2   Plaintiff appeals the trial court's grant of defendant's motion for summary judgment, contending he raised a genuine issue of material fact that defendant retaliatorily discharged plaintiff for filing workers' compensation claims. For the following reasons, we affirm.

1

¶ 3                          I. BACKGROUND

¶ 4    In June 2008, defendant, Shawnee Community College, hired plaintiff, Kent Purchase, as a maintenance facilitator, which required plaintiff to perform various maintenance jobs. Subsequently, plaintiff filed a workers' compensation claim for an injury sustained while working in September 2008. In December 2009, plaintiff sustained another injury while on the job.

¶ 5    During all relevant times, there were three other employees in the maintenance department, all of whom were senior to plaintiff. Don Koch, defendant's facilities director who supervised the maintenance department, completed evaluations of all four maintenance employees in February 2010. Plaintiff received a lower performance score than any other maintenance employee.

¶ 6    On March 16, 2010, plaintiff's attorney sent a letter to defendant notifying it of plaintiff's intent to file another workers' compensation claim for his December 2009 injury. On March 30, 2010, defendant notified plaintiff that he was being laid off, effective June 30, 2010, due to budget cuts forcing a reduction in workforce. Plaintiff discussed the matter with Dr. Peterson, the president of Shawnee Community College, who told plaintiff that he would be rehired if money became available in the future.

¶ 7    Thereafter, plaintiff filed a complaint, in the United States District Court for the Southern District of Illinois, asserting—in relevant part—claims under Title VII of the Civil Rights Act (42 U.S.C. § 2000e *et seq.* (2012)) and retaliatory discharge. Defendant filed a motion for summary judgment. After a hearing on defendant's motion for summary judgment, the Southern District granted the motion in favor of defendant because plaintiff

2

failed to establish a *prima facie* case of discrimination for his claims under Title VII of the Civil Rights Act. It, however, explicitly declined to exercise supplemental jurisdiction over plaintiff's state law claims of retaliatory discharge.

¶ 8    With respect to plaintiff's racial discrimination claim, the Southern District found plaintiff failed to establish that the white members of the maintenance staff were similarly situated to him where there was no evidence to support his allegation that he was far more qualified than his coworkers based on his education and 30 years' experience. The court also noted:

> "Even if Purchase had established his *prima facie* case, the College gave a legitimate, nondiscriminatory reason for terminating him: it had to eliminate a maintenance position, and Purchase had the least seniority and the lowest evaluation score among the members of the maintenance staff. Purchase failed to produce sufficient evidence showing that reason is pretext."

¶ 9    Subsequently, in state court, plaintiff filed a *pro se* complaint of retaliatory discharge and violation of Title VII of the Civil Rights Act (42 U.S.C. § 2000e *et seq.* (2012)) against defendant, alleging defendant fired plaintiff based on his race and for filing two workers' compensation claims. On September 25, 2015, plaintiff, through private counsel, filed an amended complaint, omitting plaintiff's claims under Title VII of the Civil Rights Act.

¶ 10    Regarding his retaliatory discharge claim, the amended complaint alleged that while plaintiff was given a lower performance score than any other maintenance worker, an initial termination determination occurred at defendant's board meeting on March 1, 2010, and

3

he was not included on the termination list despite having already been evaluated. Plaintiff alleged that the decision to terminate him occurred on March 30, 2010, only after defendant was notified of plaintiff's intent to file a second workers' compensation claim.

¶ 11   Defendant filed a motion to dismiss the amended complaint, claiming the Southern District's order collaterally estopped plaintiff from disputing defendant had a "legitimate, non-discriminatory reason for terminating" plaintiff. Defendant contended, as a result, plaintiff could not prove the causation element of retaliatory discharge.

¶ 12   After a hearing on January 21, 2016, the court denied defendant's motion to dismiss. It reasoned:

> "The racial discrimination claim in federal court is a different and separate issue from the retaliatory discharge claim at bar," noting that "although defendant makes allegations that might qualify as legitimate reasons to terminate [plaintiff], they aren't part of the analysis, as the only issue pertinent to retaliatory discharge is whether the determination to terminate [plaintiff] was in retaliation for filing a worker's compensation claim."

It further found there were genuine issues of material fact regarding such issue.

¶ 13   Subsequently, Tiffany Ryan, defendant's chief financial officer, and Koch were deposed on August 18, 2017. Ryan averred that she oversaw 12 departments, including maintenance. Ryan stated that the February 2010 evaluations were the annual college-wide evaluations. She explained that the supervisors of each department completed the evaluations and gave them to the vice presidents for their review.

4

¶ 14 She averred that the State's failure to pay defendant resulted in severe financial issues such that defendant could not meet the demand of payroll. As a result, she and the other vice presidents worked, for several months, on a list of people to be discharged. The vice presidents made the list based on the suggestion of the supervisors for each department, and defendant's board of trustees made the ultimate decision to terminate. Ryan clarified that there were additional people added to the initial termination list because the financial position got worse.

¶ 15 In his deposition, Koch stated that, as a part of his job duties, he evaluated plaintiff and the other maintenance employees. He averred that he never altered or modified any evaluations after the initial interview. Koch stated that defendant was considering laying off people due to reduced funding, and that plaintiff was discharged because he was least senior out of all the maintenance employees.

¶ 16 On October 8, 2018, plaintiff was also deposed. He averred that, after he was terminated, he spoke with defendant's board member, Maxine Russell, on the telephone regarding his injuries that were the subject of his two workers' compensation claims. On the phone call, Russell told plaintiff that he "was set up."

¶ 17 Plaintiff stated that he reviewed the evaluations of the other employees in the maintenance department and that all of them had seniority over plaintiff. He believed some of the other employees' scores were altered because there were obvious changes on two other employees' evaluation sheets in that the score under the initiative section was increased by one point and the total score changed from a 23 to 24 on the last page. Plaintiff

5

acknowledged that even if the employees' score remained the original score of 23, they would still be one point higher than plaintiff's evaluation score of 22.

¶ 18 Regarding his own evaluation, plaintiff expressed disagreement and stated that he should not have been scored so low given his knowledge and experience. He was also dissatisfied when he inquired about his score and Koch did not provide further explanation. Plaintiff, however, did not believe his workers' compensation claims impacted his evaluation.

¶ 19 Plaintiff also averred that another employee, Hattie Adkinson, told plaintiff that the board created a list of employees to be terminated. Adkinson stated that, initially, the list did not include plaintiff's name, but it was later added after plaintiff notified defendant about his second workers' compensation claim. Plaintiff confirmed that he never saw the initial termination list. However, he averred that Adkinson told plaintiff the other names on the initial termination list and none of the other maintenance workers were listed. Plaintiff further stated that he personally observed the second termination list, and more names were on the second list than the initial list.

¶ 20 Plaintiff believed, based on Ryan's previous comment to a group of people that "they could get necessary funds if need be to keep the people employed," that all the listed persons would have been eliminated even if the reduction in force had not occurred. He clarified that Ryan stated as such during a meeting that occurred after he received notification of his termination but acknowledged that Ryan did not say defendant was going to be bringing people back at that time.

¶ 21    On January 9, 2019, defendant filed a motion for summary judgment. In its motion, defendant once again argued that the Southern District's finding that defendant gave a "legitimate, non-discriminatory reason for terminating" plaintiff collaterally estopped him from relitigating that issue and therefore he could not establish the causation element of his retaliatory discharge claim. On February 7, 2019, plaintiff filed an objection to defendant's motion for summary judgment. Plaintiff argued that the Southern District's discussion of defendant's nondiscriminatory reason to terminate should not collaterally estop plaintiff because it was *obiter dictum*. In support of this argument, plaintiff noted that the Southern District specifically stated, "Even if [plaintiff] had established his *prima facie* case," before discussing defendant's reason for termination. Plaintiff further contended, unlike the federal case, he pled facts, which were supported by his deposition testimony, that indicated a genuine issue of material fact on whether plaintiff was added to the list of employees to be terminated based on his filing of two workers' compensation claims.

¶ 22    In support of his motion, plaintiff attached his deposition and the depositions of Koch and Ryan. Plaintiff also attached his signed affidavit, attesting, "Upon information and belief, the reasons given by Defendant for my discharge were pretextual in nature, because I was not listed as subject to discharge before the receipt of the letter regarding my workers' compensation claim, and I was then notified that I was to be discharged shortly afterward." The affidavit further averred that the evaluation scores for two of plaintiff's coworkers were visibly overwritten, giving them higher scores than plaintiff, and that all the statements in the affidavit were within his personal knowledge.

¶ 23    On February 8, 2019, the court held a hearing on defendant's motion for summary judgment. Defendant argued that because the Southern District's findings regarding a legitimate nondiscriminatory reason to terminate was judicial *dicta*, rather than *obiter dicta*, it carried weight and should be followed unless the court found it to be incorrect. Defendant also contended the court should alternatively find the record in this case showed there was no genuine dispute that defendant had a nonpretextual reason for terminating plaintiff and, thus, plaintiff failed to establish causation as a matter of law. Defendant explained that even if the court accepted that the other employees' scores changed, the original scores would have remained higher than plaintiff's. Defendant also argued that plaintiff's contentions regarding two lists of terminations were bare allegations supported only by inadmissible hearsay, as plaintiff admitted that someone told him about the original list, and he never saw it.

¶ 24    Plaintiff argued that the Southern District's order regarding defendant's nondiscriminatory reason for terminating plaintiff was *dicta* that should not be considered in this case. He also claimed his affidavit presented a genuine dispute as to whether defendant's nondiscriminatory reason for terminating plaintiff was pretextual. Plaintiff explained that the list of proposed terminations that was disclosed at a March 1, 2010, board meeting did not include his name, although his low score and seniority status were known at that time. Then, after plaintiff's attorney notified defendant that he would be filing a second workers' compensation claim, defendant notified plaintiff on March 30, 2010, that he would be laid off. Plaintiff further argued the depositions of Ryan and Koch

showed more glowing remarks of plaintiff than his evaluation score reflected, and that two of the other maintenance employees' scores were altered.

¶ 25    The court noted that plaintiff attested that he had personal knowledge as to all the facts in his affidavit and asked plaintiff's counsel to present the list that plaintiff attested to seeing. Plaintiff's counsel explained that statement was made in error and that plaintiff knew of the original list that excluded his name only because someone else informed him of such list. Accordingly, the court granted plaintiff two weeks leave to amend or correct his affidavit.

¶ 26    Thirteen days later, plaintiff filed an amended affidavit, omitting plaintiff's previous statement that he knew the initial discharge/termination list did not include his name. Also, plaintiff additionally attested that, according to Koch's and Ryan's depositions, his evaluation scores were marked lower than their opinions of his work quality.

¶ 27    On February 26, 2019, the court granted defendant's motion for summary judgment. Despite its January 2016 order, it found the Southern District's factual finding that defendant gave a legitimate, nondiscriminatory reason for termination was not *dicta* and plaintiff was collaterally estopped from relitigating or arguing the issue. As such, the court found plaintiff could not establish a *prima facie* case for retaliatory discharge.

¶ 28    Alternatively, the court found even if the court were to find the Southern District's order was mere *dicta*, "no genuine issues of material fact exist in the record." It noted defendant had a valid nonpretextual reason to terminate plaintiff because the termination was anchored to a budget crisis and plaintiff was the least senior and lowest scored employee. It found plaintiff relied only upon his "beliefs," unsupported by any competent

9

evidence. The court determined the record further indicated that but for the reduction in funding, plaintiff would never have been terminated, and, even nine years later, plaintiff's previous maintenance position had never been filled.

¶ 29 Two days later, on February 28, 2019, plaintiff filed Hattie Adkinson's affidavit. Adkinson attested that she was employed as a full-time instructor for defendant during the relevant period. At that time, she received the first termination list from Beth Darden, executive administrative assistant to defendant's president, and plaintiff's name was not originally listed as an employee being considered for discharge. Adkinson averred she subsequently received a second list from Darden, which included plaintiff's name as an employee being considered for discharge.

¶ 30 On March 28, 2019, plaintiff filed a motion to reconsider, arguing that the court's February 8, 2019, finding, *i.e.*, that plaintiff was collaterally estopped from asserting that his seniority and evaluation score was pretextual, was barred under principles of *res judicata* by its January 2016 order—which reached a contrary conclusion.

¶ 31 Defendant filed a response, arguing the court made the correct finding that plaintiff was collaterally estopped from challenging defendant's legitimate nondiscriminatory reason. Defendant also noted that plaintiff's motion to reconsider failed to address the court's finding that the record clearly showed defendant had a valid and nondiscriminatory reason to terminate plaintiff, a second and independent basis for granting summary judgment.

¶ 32 On June 11, 2019, the court held a hearing on plaintiff's motion to reconsider. Plaintiff argued that permitting a court to change its decision regarding an issue—meaning

deciding an issue in one motion and later changing its determination of the issue with respect to a subsequent motion—would allow relitigation of an issue infinitely. After the court explained that its grant of summary judgment was also based on the second ground that no genuine issue of material fact existed on the record and asked plaintiff to explain the genuine issue of material fact in this case, plaintiff averred that he attempted to locate the original list that excluded his name but was unsuccessful, and so he supplemented the record with the affidavit of the person who personally witnessed the list, Adkinson. When defendant asked whether Adkinson's affidavit was a part of the original summary judgment response, plaintiff stated it was not and explained that he provided the affidavit because the court asked for additional evidence on that issue. Defendant contended that the court's grant of leave was limited to amending plaintiff's affidavit and parties are typically not allowed to supplement the record after the court has heard argument. Therefore, defendant argued that the court should not consider the affidavit in plaintiff's motion to reconsider.

¶ 33    The court denied plaintiff's motion to reconsider. The court found it made no error in its application of law and declined to consider plaintiff's offer of new evidence because the evidence was available at the time of the hearing on defendant's motion for summary judgment.

¶ 34                                    II. ANALYSIS

¶ 35    On appeal, plaintiff asserts the trial court erred in granting defendant's summary judgment motion for several reasons. First, plaintiff argues that, under the doctrine of *res judicata*, the trial court's January 2016 order barred it from reconsidering whether the Southern District's order collaterally estopped plaintiff from disputing defendant's

nondiscriminatory reason for termination, and, alternatively, that the court's finding regarding collateral estoppel was erroneous. Second, plaintiff contends that the court erred in failing to consider Adkinson's affidavit in deciding plaintiff's motion to reconsider. Lastly, plaintiff claims the court erred in granting summary judgment for defendant where there was a genuine issue of material fact regarding whether defendant's proffered reason to terminate was pretextual. We address each in turn.

¶ 36                    A. Southern District's Order

¶ 37    From the outset, we note plaintiff's argument that the trial court's January 2016 order barred the trial court's reconsideration of the issue when addressing defendant's summary judgment order more concerns collateral estoppel, rather than *res judicata*. While both doctrines serve the same purpose, *res judicata* concerns claim preclusion and collateral estoppel concerns issue preclusion. *Hayes v. State Teacher Certification Board*, 359 Ill. App. 3d 1153, 1161 (2005). Plaintiff's argument asserts that the trial court's January 2016 order precludes reconsideration of an issue, not an entire claim.

¶ 38    Regardless, we find that the trial court was not precluded from readdressing the question whether the Southern District's order collaterally estopped plaintiff from disputing defendant's alleged reason for terminating plaintiff under either doctrine. Both *res judicata* and collateral estoppel require a *final* judgment on the merits. *Id.* at 1161-62. A "denial of a motion to dismiss is an interlocutory order that is not final." *State Farm Mutual Automobile Insurance Co.* v. *Illinois Farmers Insurance Co.*, 226 Ill. 2d 395, 415 (2007); *Gregory v. Farmers Automobile Insurance Ass'n*, 392 Ill. App. 3d 159, 162 (2009). Such orders may be reviewed or modified by the trial court while it retains jurisdiction over

the entire controversy (*Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 28) and cannot serve as the basis for *res judicata* or collateral estoppel (*Alliance Syndicate, Inc. v. Parsec, Inc.*, 318 Ill. App. 3d 590, 602 (2000)).

¶ 39 The January 2016 order denied defendant's motion to dismiss. As such, the order was an interlocutory order subject to review and modification while the case remained pending in the trial court.

¶ 40 Plaintiff alternatively contends that even if the court could reconsider whether the preclusive effect of the Southern District's order, the trial court erred in finding that the Southern District's order collaterally estopped plaintiff from disputing that defendant had a nondiscriminatory reason for termination. The application of collateral estoppel presents a question of law that we review *de novo*. *Kim v. St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis*, 395 Ill. App. 3d 1086, 1092 (2009).

¶ 41 "Collateral estoppel applies when a party participates in two separate and consecutive cases arising out of different causes of action and some controlling factor or question material to the determination of both cases has been adjudicated by a court of competent jurisdiction against the party in the former suit." *Hayes*, 359 Ill. App. 3d at 1162. For collateral estoppel to apply, a defendant must establish: "(1) the issues in the cases are identical, (2) there is a final judgment on the merits, and (3) the party against whom an estoppel is asserted is a party or is in privity with a party to the prior adjudication." *Id.* Being an equitable doctrine, even where the threshold elements are satisfied, collateral estoppel cannot be applied if it will result in unfairness to the party being estopped. *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (1997).

13

¶ 42    Plaintiff does not argue any of the threshold requirements of collateral estoppel, rather he contends that the Southern District's order regarding defendant's nondiscriminatory reason for terminating plaintiff was not necessary to its determination and therefore should not be a basis for collateral estoppel. We agree.

¶ 43    "[C]ollateral estoppel applies only to controlling facts or questions material to the determination of both causes." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 153-54 (1994). The determination of the issue must have been essential to the judgment in the first litigation. *Talarico*, 177 Ill. 2d at 191; Restatement (Second) of Judgments § 27 cmt. h (1982).

¶ 44    The Southern District's judgment in dismissing plaintiff's racial discrimination claim did not depend on defendant providing a legitimate, nondiscriminatory reason to terminate. Instead, the Southern District found plaintiff did not establish a *prima facie* case of racial discrimination by failing to establish the white members of the maintenance staff, who were treated more favorably, were similarly situated to him. It was only after the Southern District dismissed plaintiff's claim based on the failure to establish a *prima facie* case that the Southern District commented on defendant's reason for terminating plaintiff. As such, its determination regarding defendant's reason for terminating plaintiff was unnecessary to its judgment of granting summary judgment in favor of defendant.

¶ 45    B. Alternative Basis for Summary Judgment—Record Failed to Present Any Genuine Issue of Material Fact to Defendant's Nondiscriminatory Reason for Terminating Plaintiff

¶ 46    Having decided that the Southern District's order did not preclude plaintiff from disputing defendant's proffered reason for terminating plaintiff, we must decide whether

14

the trial court erred in finding there was no genuine dispute of material fact that defendant had a nonpretextual reason for terminating plaintiff. We review the trial court's grant of summary judgment *de novo* and therefore give no deference to the court's decision or rationale. *Alward v. Jacob Holding of Ontario LLC*, 2019 IL App (5th) 180332, ¶ 16.

¶ 47 Summary judgment is appropriate if the record establishes there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In making that determination, the pleadings, depositions, admissions, and affidavits on file are construed in the light most favorable to the nonmoving party and against the movant. *Hunt v. Farmers Insurance Exchange*, 357 Ill. App. 3d 1076, 1077-78 (2005). "If a party moving for dismissal or summary judgment supplies facts which, if not contradicted, would entitle the party to a judgment as a matter of law, the opposing party cannot rely on bare allegations alone to raise issues of material fact." *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 835 (2006). A party need not prove his or her case to survive summary judgment, but he or she "must present a factual basis that would arguably entitle the party to a judgment." *Hassebrock v. Deep Rock Energy Corp.*, 2015 IL App (5th) 140105, ¶ 37; *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1071 (1992).

¶ 48 For the purposes of summary judgment, facts contained in an affidavit, which are not contradicted by counteraffidavit, must be taken as true. *Barber-Colman Co.*, 236 Ill. App. 3d at 1071. However, a court cannot consider evidence that would be inadmissible at trial. *Watkins v. Schmitt*, 172 Ill. 2d 193, 203-04 (1996); *Brown, Udell & Pomerantz, Ltd. v. Ryan*, 369 Ill. App. 3d 821, 824 (2006).

¶ 49 The depositions of Ryan and Koch demonstrated that defendant had a nondiscriminatory reason to fire plaintiff, as they stated defendant was required to cut 11 employees for budgetary reasons and one person was to come from the maintenance department. They also stated—and plaintiff conceded—that plaintiff had the lowest evaluation score and was the least senior employee of the maintenance department. Even if we accept plaintiff's contention that the evaluation scores of two other maintenance employees were altered, the original scores of the two other maintenance workers remained higher than plaintiff's score by one point.

¶ 50 Plaintiff failed to sufficiently dispute defendant's reason was pretextual where there was no admissible evidence to support his contention that an initial termination list excluded his name. While plaintiff's first affidavit asserted that there was an initial termination list that excluded his name, he admitted that he had no personal knowledge of the list and amended his affidavit to remove that contention. We further note that plaintiff acknowledged that he did not know if the initial list included all 11 employees that were subject to the termination or if there was another maintenance worker listed. Without the initial list or other admissible evidence proving the contents of the initial list, there was only inadmissible hearsay to support the fact that plaintiff's name was excluded off the initial termination list. Consequently, plaintiff's argument that defendant's reasoning was pretextual is conclusory and not proven by any independent evidence. *Bennett v. Raag*, 103 Ill. App. 3d 321, 329 (1982) ("Plaintiffs' bare assertion *** is not a substitute for actual proof so as to prevent the entry of summary judgment ***."); *Foley v. Builtech Construction, Inc.*, 2019 IL App (1st) 180941, ¶ 70 ("the bare possibility of a causal

16

connection [does not] raise a factual inference"). We therefore find summary judgment in favor of defendant was proper. See *Bennett*, 103 Ill. App. 3d at 329 (no genuine issue of material fact where the uncontradicted affidavits filed by defendants countered the material allegations of the complaint).

¶ 51                                 C. Adkinson's Affidavit

¶ 52    Lastly, plaintiff argues that the trial court erred by declining to consider Adkinson's affidavit in denying plaintiff's motion to reconsider. A trial court's ruling on a motion to reconsider is reviewed for an *abuse of discretion. Robidoux v. Oliphant*, 201 Ill. 2d 324, 347 (2002). " 'The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the law.' " *Samano v. Temple of Kriya*, 2020 IL App (1st) 190699, ¶ 43 (quoting *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36). The court is under no obligation to consider evidence if a party fails to provide a reasonable explanation regarding its inability to produce the evidence at the original hearing. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 71. As the Fourth District explained in *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248-49 (1991):

> "Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. Civil proceedings already suffer from far too many delays, and the interests of finality and efficiency require that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be."

17

Many appellate courts and the Illinois Supreme Court have also approvingly cited this proposition. *Vantage Hospitality Group, Inc. v. Q Ill Development, LLC*, 2016 IL App (4th) 160271, ¶¶ 42-43 (collecting cases); *Robidoux*, 201 Ill. 2d at 345-47 (approvingly quoting *Gardner*, 213 Ill. App. 3d at 248-49).

¶ 53   Plaintiff clearly filed Adkinson's affidavit after the court entered its order on defendant's summary judgment motion. Plaintiff's counsel stated that the affidavit was not filed with plaintiff's amended affidavit because he failed to obtain Adkinson's signature in a timely manner. However, counsel provided no reason why the affidavit was not obtained prior to filing plaintiff's response to defendant's motion for summary judgment, although counsel knew of the termination lists when he amended plaintiff's complaint roughly three years prior to defendant's motion for summary judgment and plaintiff mentioned that Adkinson had knowledge of such lists in his deposition three months prior to defendant's motion for summary judgment. Under these circumstances, we do not find the court abused its discretion in declining to consider Adkinson's affidavit with plaintiff's motion to reconsider.

¶ 54   Without Adkinson's affidavit, plaintiff's motion to reconsider presented the same facts and arguments as his original response to defendant's motion for summary judgment. Therefore, the court also did not abuse its discretion in denying plaintiff's motion to reconsider.

¶ 55                                      III. CONCLUSION

¶ 56   While the trial court could reconsider whether a previous federal court decision collaterally estopped plaintiff from disputing defendant's nondiscriminatory reason for

18

terminating plaintiff, the court erred in holding that collateral estoppel applied. Nevertheless, the trial court properly determined that it need not consider an untimely filed affidavit and that the record showed no genuine issue of material fact regarding defendant's nondiscriminatory reason for terminating plaintiff. Accordingly, we affirm the trial court's grant of summary judgment in favor of defendant.

¶ 57    Affirmed.