THOMAS C. TRIGG, Plaintiff-Appellant, v. TED SANDERS, State Superintendent of Education, *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0113

Opinion filed November 30, 1987.

Marc J. Ansel, of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:

On August 8, 1968, plaintiff Thomas C. Trigg was issued a high school type 09 teaching certificate by the Illinois State Teacher's Certification Board (Board), pursuant to the Illinois School Code (Code) (Ill. Rev. Stat. 1985, ch. 122, par. 21—1 *et seq.*).

On February 20, 1986, Trigg was charged by information in the circuit court of Piatt County with six counts of harassment by tele-

phone (Ill. Rev. Stat. 1985, ch. 134, par. 16.4—1(1)). On April 8, 1986, Trigg entered a negotiated plea of guilty to five of the six counts. Pursuant to the plea agreement, Trigg was sentenced to one year of probation with 40 hours of public service work, and was fined $400 plus costs. He was also ordered to undergo a psychological examination and receive counseling.

Then on April 30, 1986, Donald L. Pratt, the superintendent of Monticello Community School District, No. 25, sent a letter to Charles Edmundson, the regional superintendent for Douglas and Piatt Counties. Pratt notified the regional superintendent of Trigg's convictions for harassment by telephone and requested that proceedings commence to suspend Trigg's teaching certificate. See, e.g., Ill. Rev. Stat. 1985, ch. 122, pars. 10—21.9(b), (e).

On May 1, 1986, Trigg was served by a certified letter from the regional superintendent, with a "Statement of Charges" and a "Notice of Opportunity for Hearing Prior to Suspension of Certificate," pursuant to section 21—23 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 21—23). The notice informed Trigg that within 10 days of the receipt of the notice he could request a hearing. The notice further stated that if he did not request a hearing within the 10-day period, the allegations contained in the attached statement of charges would be deemed uncontested by him and his teaching certificate would be suspended.

The regional office of education received no request from Trigg for a hearing.

On May 20, 1986, pursuant to the aforementioned notice and based upon the harassment by telephone convictions, the regional superintendent issued an order suspending plaintiff's teaching certificate for a period not to exceed one year. The order stated that Trigg could appeal the suspension if he requested a hearing before the Board within 10 days of his receipt of the order.

The record reveals that Trigg did not appeal the suspension.

On May 21, 1986, defendant Ted Sanders, the State Superintendent of Education, served Trigg with a notice of hearing to be held before the defendant Board. The notice indicated that the hearing was being held to determine whether Trigg's teaching certificate should be revoked based upon his convictions for harassment by telephone.

On June 9, 1986, Trigg filed an objection to jurisdiction and a motion to dismiss, arguing that the May 20, 1986, suspension order by the regional superintendent was a final disciplinary act, thereby precluding further disciplinary action based upon the same conduct.

A hearing was held on August 5, 1986, before the Board to deter-

mine whether Trigg's teaching certificate should be revoked. At that time, the Board held that it had jurisdiction over the matter, it denied Trigg's motion to dismiss, and it voted to recommend to the State Superintendent of Education that plaintiff's teaching certificate be revoked. The Board based its recommendation for revocation on Trigg's "unprofessional conduct, immorality and a condition of health detrimental to the welfare of pupils due to his conduct in making obscene telephone calls to female students." Trigg did not appear at the hearing, either personally or through counsel.

On August 26, 1986, the Illinois State Board of Education, acting through the State Superintendent of Education, issued an administrative order in the revocation proceeding, ordering that Trigg's teaching certificate be revoked. The order stated, *inter alia:*

> "Section 21—23 of the Illinois School Code, Ill. Rev. Stats., 1985, ch. 122, Section 21—23, provides that any teaching certificate issued by the State may be revoked upon evidence of unprofessional conduct, immorality or a condition of health detrimental to the welfare of pupils. The conduct of Thomas Trigg in making telephone communications of a lewd and indecent nature to two female students demonstrates unprofessional conduct, immorality and a condition of health detrimental to the welfare of pupils. Upon due consideration of the evidence which was presented before the State Teacher Certification Board and the recommendations of the State Teacher Certification Board and Regional Superintendent Edmundson, the State Superintendent hereby orders that the teaching certificate of Thomas Trigg, High School Certificate No. 793468 be revoked."

On September 8, 1986, Trigg filed a complaint in the circuit court of Sangamon County (case No. 86MR180) seeking administrative review of the order of the State Superintendent of Education revoking Trigg's teaching certificate. On the same date, Trigg filed a motion to consolidate the claim for administrative review with a pending chancery suit (case No. 86CH136) which Trigg brought to enjoin the State from taking any action on his teaching certificate prior to the scheduled hearing. The defendants filed their answer in the administrative review proceeding and a motion to dismiss the chancery suit.

Following a hearing, the circuit court issued an order on January 29, 1987, denying the motion to consolidate, staying the injunctive proceeding until further order, and affirming the administrative decision in its entirety.

Trigg now appeals.

As previously indicated, the regional superintendent of education suspended Trigg's teaching certificate for a period not to exceed one year, following the procedure set forth in section 21—23 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 21—23). Thereafter, the State Superintendent of Education revoked Trigg's teaching certificate, also following the procedure set forth in section 21—23 of the Code. It is undisputed that both the suspension and the revocation were based upon the same conduct, *i.e.*, Trigg's harassment by telephone convictions. On administrative review, the circuit court of Sangamon County affirmed the decision of the State Superintendent revoking Trigg's teaching certificate.

Section 21—23 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 21—23) provides in part:

> "Any certificate issued pursuant to this Article may be suspended for a period not to exceed one calendar year by either the regional superintendent or State Superintendent of Education upon evidence of immorality, a condition of health detrimental to the welfare of pupils, incompetency, unprofessional conduct, the neglect of any professional duty, willful failure to report an instance of suspected child abuse or neglect *** or other just cause. *** The regional superintendent or State Superintendent of Education shall upon receipt of evidence of immorality, a condition of health detrimental to the welfare of pupils, incompetency, unprofessional conduct, the neglect of any professional duty or other just cause serve written notice to the individual and afford the individual opportunity for a hearing prior to suspension. If a hearing is requested within 10 days of notice of opportunity for hearing it shall act as a stay of proceedings not to exceed 30 days. No certificate shall be suspended until the teacher has an opportunity for a hearing at the educational service region. When a certificate is suspended, the right of appeal shall lie to the State Teacher Certification Board. When an appeal is taken within 10 days after notice of suspension it shall act as a stay of proceedings not to exceed 60 days. Any certificate may be revoked for the same reasons as for suspension by the State Superintendent of Education. No certificate shall be revoked until the teacher has an opportunity for a hearing before the State Teacher Certification Board, which hearing must be held within 60 days from the date the appeal is taken."

Trigg contends that the State Superintendent had no authority under section 21—23 of the Code (Ill. Rev. Stat. 1985, ch. 122, par.

21—23) to subsequently revoke his teaching certificate based upon the same conduct for which the regional superintendent had suspended his teaching certificate. It is Trigg's position that the suspension of his teaching certificate by the regional superintendent was a final disciplinary action under section 21—23 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 21—23). Trigg further contends that section 21—23 (Ill. Rev. Stat. 1985, ch. 122, par. 21—23) contains no language which authorizes interim or temporary suspension or disciplinary actions. On these bases, Trigg maintains that because no additional action was required by the statute after the regional superintendent's suspension, then the subsequent revocation was void, illegal, unauthorized and contrary to law. Trigg also asserts that section 21—23 of the Code does not authorize modification or enhancement of a final disciplinary action absent an appeal of the action in accordance with its provisions. Thus, Trigg concludes that since no appeal of the suspension was taken in the instant case, then the suspension by the regional superintendent could not be modified or enhanced by the State Superintendent, rendering the revocation void, illegal, unauthorized and contrary to law.

Trigg contends that *Burton v. Civil Service Comm'n* (1979), 76 Ill. 2d 522, 394 N.E.2d 1168, is controlling here. The plaintiff in *Burton*, a security fraud investigator with the Department of Revenue, was discharged from his employment for unethical conduct arising out of the acceptance of a $20 gratuity from a taxpayer. Prior to Burton's discharge, he was served with a 10-day suspension effective February 18. The disciplinary action was characterized as a "suspension for less than 30 days [for] accepting a gratuity from a taxpayer." Then on February 26, Burton was notified of his "suspension—pending discharge." A discharge hearing was conducted before a hearing officer appointed by the Civil Service Commission, pursuant to section 11 of the Personnel Code (Ill. Rev. Stat. 1975, ch. 127, par. 63b111). The hearing officer recommended that the charges, which would normally warrant discharge, be dismissed because Burton had already received a 10-day suspension for the same charges. The Commission reversed the decision and discharged Burton for cause, concluding that Burton's suspension was levied only for the offense of taking a gratuity and that Burton could be discharged for the separate, subsequent acts of attempting to cause a fellow employee to accept a gratuity and of wilfully providing false information to officials who were investigating the charges.

On administrative review, the circuit court in *Burton* reversed, reasoning that the Department of Revenue's disciplinary actions were

akin to a violation of double jeopardy and that the Department should be estopped from enhancing the severity of the original suspension. The appellate court affirmed the circuit court, holding that the Commission's findings were against the manifest weight of the evidence and that the Department of Revenue lacked authority to augment a punishment previously imposed upon an employee. The supreme court affirmed holding that the Department of Revenue erred when it first issued a 10-day suspension, rather than a suspension pending decision on discharge.

In reaching its decision, the supreme court in *Burton* stated:

"State personnel rules provide separately for suspensions totaling less than 30 days in a 12-month period, for suspensions totaling more than 30 days in a 12-month period, and for suspensions pending decision on discharge. A suspension pending decision on discharge may be levied for up to 30 days. Its purpose is to expedite the immediate, but interim, removal of an employee pending a final decision on discharge. The other two forms of suspensions, on the other hand, represent final determinations in a disciplinary matter. The three are distinct disciplinary actions which are not interchangeable. Final disciplinary actions, like other administrative decisions, may be reconsidered, modified or altered only if authorized by statute. (*Pearce Hospital Foundation v. Public Aid Com.* (1958), 15 Ill. 2d 301, 307; *Illini Coach Co. v. Greyhound Lines, Inc.* (1949), 403 Ill. 21.) The legislature has conferred no such power upon the Department. (See Ill. Rev. Stat. 1975, ch. 127, pars. 39b through 39b33.) Consequently, the Department may not convert what is, in all aspects, a final suspension of less than 30 days into an interim suspension pending decision on discharge as a means of enhancing punishment for the same misconduct." (76 Ill. 2d at 526-27, 394 N.E.2d at 1170.)

The supreme court concluded that both the 10-day suspension and the subsequent discharge related to the same course of misconduct. Thus, the court held that "[t]o allow the Department to divide an employee's unethical conduct into its component parts after it has punished the employee would be to endow the Department with the power to reconsider its final disciplinary actions." 76 Ill. 2d at 527-28, 394 N.E.2d at 1170-71.

Defendants, the State Superintendent and the Board, contend that a plain reading of section 21—23 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 21—23), and an application of the standard rules of statutory construction, reveal that the State Superintendent of Edu-

cation may revoke a teacher's certificate for certain conduct, notwithstanding the fact that a regional superintendent has already suspended that teacher's certificate for the same conduct. Defendants assert that the language of section 21—23, liberally construed, demonstrates that the regional superintendent and State Superintendent are each vested with separate and independent authority to pursue the sanction of suspension on certain bases, and with notice to the individual and an opportunity to be heard. Section 21—23 sets up two separate procedures: one that the regional superintendent or the State Superintendent of Education must follow in order to suspend a teacher's certificate (see Ill. Rev. Stat. 1985, ch. 122, par. 21—23); and, as a second step, a procedure by which "any certificate may be revoked for the same reasons as for suspension" by the State Superintendent (acting in his capacity as chief education officer for the State Board of Education after proceedings before the Board). Defendants argue there is no limitation placed upon this power to revoke. (Ill. Rev. Stat. 1985, ch. 122, par. 21—23.) Defendants further contend that *Burton v. Civil Service Comm'n* (1979), 76 Ill. 2d 522, 394 N.E.2d 1168, relied upon by Trigg, is inapposite.

█▌ █ The instant case is one of first impression in Illinois. A resolution of the issue presented requires an examination of the statute involved together with an application of the rules of statutory construction. The primary rule of statutory interpretation and construction, to which all other canons and rules are subordinate, is to ascertain and effectuate the true intent and meaning of the legislature. (*People ex rel. Hanrahan v. White* (1972), 52 Ill. 2d 70, 73, 285 N.E.2d 129, 130, *cert. denied* (1972), 409 U.S. 1059, 34 L. Ed. 2d 511, 93 S. Ct. 562.) In interpreting a statute which has not yet been judicially interpreted, a court must give the legislative language its plain and ordinary meaning. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 381 N.E.2d 222.) If the language of the statute is plain, clear and unambiguous, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect by the courts without resorting to other aids for construction. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167; *Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 381 N.E.2d 222.

█▌ However, the proper interpretation of a statute and determination of legislative intent cannot always be based upon its language alone. Where, as here, a statute is ambiguous and the legislative intent cannot be ascertained from the plain and ordinary meaning of its language, then the court is guided by the rules of statutory construction. (*Rigney v. Edgar* (1985), 135 Ill. App. 3d 893, 482 N.E.2d

367.) Generally, the interpretation of a statute must be grounded on the nature and object of the statute as well as the consequences which would result from construing it one way or another. (*Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332, 1335.) Legislative intent may be ascertained from the reason and necessity for the act, the evils sought to be remedied, and the objects and purposes sought to be obtained. (*In re Marriage of Antonich* (1986), 148 Ill. App. 3d 575, 499 N.E.2d 654, *appeal denied* (1987), 113 Ill. 2d 574, 505 N.E.2d 350.) Moreover, statutory interpretations by administrative agencies express an informed source for ascertaining legislative intent. *Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 344-45, 348 N.E.2d 161, 165.

■ In seeking to ascertain and give effect to legislative intent, a court should not create new rights or limitations not suggested by the language of the statute. (*Methodist Medical Center v. Taylor* (1986), 140 Ill. App. 3d 713, 489 N.E.2d 351.) Moreover, a court cannot read into a statute words which are not within the intention of the legislature as determined from the statute, nor can a court restrict or enlarge the meaning of a statute. *People ex rel. Daley v. Nine Thousand Four Hundred and Three Dollars, $9,403 in U.S.C.* (1985), 131 Ill. App. 3d 188, 476 N.E.2d 80.

Based upon the language of section 21—23 (Ill. Rev. Stat. 1985, ch. 122, par. 21—23), and an application of the foregoing principles, we believe the legislature intended to provide that a teacher's certificate could be first suspended by the regional superintendent, as was done here, and later revoked by the State Superintendent for the same act or misconduct after proceedings before the Board.

●7 The predominant purpose in licensing a trade or profession is to prevent injury to the public by assuring that the occupation will be practiced with honesty and integrity and by excluding those who are incompetent or unworthy. (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 551, 370 N.E.2d 1198, 1203, *cert. denied* (1978), 439 U.S. 926, 58 L. Ed. 2d 318, 99 S. Ct. 309.) Accordingly, the statute here empowers the regional superintendent and the State Superintendent with the authority to pursue and impose sanctions against a teacher's certificate for various forms of misconduct, ranging from the "refusal to attend or participate in, *** teacher's meetings, [or] professional readings" to "immorality *** incompetency *** [or the] willful failure to report an instance of suspected child abuse or neglect." (Ill. Rev. Stat. 1985, ch. 122, par. 21—23.) The statute also empowers the State Superintendent with the separate and distinct authority to revoke a teacher's certificate for any of the conduct outlined in the statute *af-*

*ter* the teacher has had an opportunity for a hearing before the Board. (Ill. Rev. Stat. 1985, ch. 122, par. 21—23.) In addition, the statute contains the following language which indicates the legislature intended the certificates could be first suspended and then revoked:

> "No certificate shall be revoked until the teacher has an opportunity for a hearing before the State Teacher Certification Board, which hearing must be held within 60 days from the date the *appeal* is taken." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 122, par. 21—23.)

Although not specifically stated, a fair reading of the statute clearly reveals that the term "appeal" is intended to refer to an appeal from a suspension. Thus, it appears that the legislature intended that the revocation of a certificate could follow a suspension.

■ To interpret the statute as barring any action on the part of the State Superintendent due to prior action on the part of the regional superintendent would be creating limitations not suggested by the language of the statute and would be at odds with the overall structure of the Code. *Methodist Medical Center v. Taylor* (1984), 140 Ill. App. 3d 713, 489 N.E.2d 351.

An examination of the Code reveals the powers and duties of the State Board of Education (see, *e.g.,* Ill. Rev. Stat. 1985, ch. 122, pars. 1A—1 through 2—3.67), including authority to grant certificates to such teachers as may be found qualified to receive them and to suspend the operation of any State certificate for immorality or other unprofessional conduct (see Ill. Rev. Stat. 1985, ch. 122, par. 2—3.9), subject to provisions of article 21 of the Code. These powers and duties are separate from those of two other distinct entities: (1) the *Regional Superintendent of Schools,* as defined in section 3—.01 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 3—.01), whose duties and powers are set forth in article 3 of the Code (see Ill. Rev. Stat. 1985, ch. 122, pars. 3—14, 3—14.26); and (2) the *State Teacher Certification Board,* as defined in section 21—13 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 21—13), the duties of which are set forth in article 21 of the Code specifically (certification of teachers) (Ill. Rev. Stat. 1985, ch. 122, pars. 21—21 through 21—26), but which is also referred to throughout the Code as appropriate (see, *e.g.,* Ill. Rev. Stat. 1985, ch. 122, pars. 2—3.11 (annual report to Governor and General Assembly), 2—3.52 (study and review of initial year of teaching), 2—3.67 (report to General Assembly with suggested changes in suspension or revocation of certificates), 34—83 (application and examination re: certification)).

In view of the different powers and duties vested in the latter two

authorities by the statutory scheme of the Code, they may be regarded as indeed separate and distinct bodies, required and constrained by the provisions of the Code to take separate and distinct actions with respect to a teacher's certificate.

We are unpersuaded by Trigg's contention that *Burton v. Civil Service Comm'n* (1979), 76 Ill. 2d 522, 394 N.E.2d 1168, is controlling here.

■ First, *Burton* involved one public employer that initially suspended and then later discharged an employee, improperly modifying its final disciplinary act. The instant case, however, involved two separate sanctions (an initial suspension and a subsequent revocation of a teaching certificate), imposed by two separate administrative authorities (the regional and State Superintendents of Education). With respect to employment that requires licensing or certification to practice, such as teaching, actions may be taken against employees on two different fronts, *i.e.*, (1) *disciplinary action* in the context of their employment, and (2) actions to affect their *certification* itself.

Further, the statutory scheme underlying the supreme court's decision in *Burton* is distinguishable. The analysis stated by this court in *Price v. Board of Fire & Police Commissioners* (1985), 139 Ill. App. 3d 333, 337-38, 487 N.E.2d 673-76, although that case also arose in a different context and under a different statutory framework, is instructive:

"This case differs from *Burton* in that here, unlike in *Burton*, the relevant statutory provision permits the imposition of a penalty by the administrative tribunal responsible for adjudicating charges of employee misconduct in addition to a suspension of limited duration which may be imposed by the employee's supervisor. Supporting this conclusion is the statement in the statute that '[n]othing in this section shall be construed to prevent' a suspension of not more than five days by the department chief. Under the interpretation of the statute for which Price contends, a suspension of not more than five days would for practical purposes be precluded by a police or fire department's desire to file with the board charges against an officer during or subsequent to a five-day suspension imposed by the chief *relating to the same conduct as that which was the basis for suspension by the chief*. Such an interpretation of this provision would violate the fundamental rule of statutory construction that clear statutory language should be given effect without resort to other aids in construction. (*People v. Robinson* (1982), 89 Ill. 2d 469, 433 N.E.2d 674; *DeWitt County Taxpay-*

*ers' Association v. County Board* (1983), 112 Ill. App. 3d 332, 445 N.E.2d 509.) Moreover, *Price's interpretation of the statute would have the practical effect of rendering the language providing for suspensions by the chief of not more than five days a dead letter,* since it is highly doubtful that chiefs would make use of their power to impose short suspensions under this provision while knowing that such action would foreclose all further disciplinary action with respect to the same conduct. Therefore, interpretation of the statute in accordance with Price's views would also run afoul of the principle that statutes should be construed so as to render no word or clause thereof meaningless or superfluous. *Pioneer Processing, Inc. v. Environmental Protection Agency* (1982), 111 Ill. App. 3d 414, 444 N.E.2d 211.

*** Finally, we note parenthetically that *our interpretation of the statute does not have the effect of placing persons such as Price in double jeopardy, since the prohibition against double jeopardy is applicable only to criminal proceedings, and public employee disciplinary proceedings are civil in nature.* See *Bart v. Department of Law Enforcement* (1977), 52 Ill. App. 3d 487, 491, 367 N.E.2d 773[, 776]." (Emphasis added.)

A double jeopardy analysis is likewise inapplicable here. We adhere to the principle that statutes should be construed so as to render no word or clause thereof meaningless or superfluous. We decline Trigg's invitation to find that the procedure set forth in section 21—23 of the Code in order to suspend a certificate, or to revoke a certificate, constitutes a double penalty for the same conduct which is not authorized by the statute. The procedure followed is specifically provided for by statute. Neither does the fact that the State Superintendent of Education, as the chief officer for the State Board of Education, issues the order revoking a certificate pursuant to proceedings and conclusions of the State Teachers Certification Board require a contrary conclusion.

■■ Finally, Trigg's argument that section 21—23 of the Code does not authorize modification or enhancement of a suspension, absent an appeal of the suspension, is unpersuasive. Trigg points to the following language contained in section 21—23 (Ill. Rev. Stat. 1985, ch. 122, par. 21—23) in support of his assertion:

"*No certificate shall be revoked until the teacher has an opportunity for a hearing before the State Teacher Certification Board,* which hearing must be held within 60 days from the date the appeal is taken." (Emphasis added.)

Such an interpretation as Trigg suggests would produce an unintended result. Courts have held that the literal meaning of a statute may be altered to express the true legislative purpose where the literal reading would apparently produce a result not intended. (*Mitee Racers, Inc. v. Carnival-Amusement Safety Board* (1987), 152 Ill. App. 3d 812, 504 N.E.2d 1298.) The fact that section 21—23 specifically provides a right to appeal an order of suspension to the Board to the certificate holder cannot be construed to preclude timely recourse by the proper authorities to proceed to revocation proceedings before the same Board. A contrary interpretation would lead to the absurd result that the protection to the certificate holder afforded by the procedures delineated in section 21—23 could be used as a shield to avoid revocation, irrespective of the conduct involved, simply by the certificate holder's choosing not to appeal the suspension of the certificate, which by statute cannot exceed a one-year calendar period. Such a construction is at odds with the purposes and policies underlying the Code and contrary to public policy.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.