FOURTH DIVISION
January 26, 2006

No. 1-05-0778

THE BOARD OF EDUCATION OF PARK FOREST )
HEIGHTS SCHOOL DISTRICT NO. 163,     )
COOK COUNTY, ILLINOIS,               )          Appeal from
                           )     the Circuit Court
       Plaintiff-Appellee,           )        of Cook County.
                                     )
   v.                      )
                                     )
THE STATE TEACHER CERTIFICATION BOARD )
AND ITS MEMBERS, JOSEPH KACZANOWSKI,  )
in his previous capacity as Regional  )
Superintendent of Schools for        )
Suburban Cook County, ROBERT         )
INGRAFFIA in his current capacity as  )        Honorable
current Regional Superintendent of    )     Anthony L. Young
Schools for Suburban Cook County,    )        Judge Presiding.
MICHAEL DUBOSE and DAVID M. SMITH,    )
in his capacity as Hearing Officer,   )
                                     )
       Defendants-Appellants.        )

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Plaintiff Board of Education of Park Forest-Chicago Heights School District No. 163, Cook County, Illinois (Board of Education or Board), filed a complaint for administrative review seeking to reverse a decision by defendant State Teacher Certification Board that overturned the suspension of defendant Michael DuBose's teaching certificate.  The circuit court

1-05-0778

reversed the decision of the Certification Board and held that DuBose's teaching certificate should be suspended for one year. DuBose appeals that determination. For the following reasons, we affirm.

## I. Background

DuBose is a probationary teacher who was employed by the Board of Education during the 2000-01 and 2001-02 school years. He did not receive a notice of nonrenewal at the end of the 2001-02 school year and was therefore rehired for the 2002-03 school year. On August 21 and 23, 2002, DuBose attended a teacher institute at District 163. He reported for teaching duties on August 26, 28 and 29, 2002. However, he used paid personal days on August 27 and 30, 2002.

DuBose submitted a written resignation on August 30, 2002, which was effective September 2, 2002. DuBose testified that the reason he resigned was due to an increase in the district's insurance premiums. DuBose also had a conversation with Robert Rubenow, the interim business manager for the district, when he submitted his resignation. DuBose indicated to Rubenow that he accepted a teaching position with District 89. DuBose testified that he was tendered a contract by District 89 on September 3, 2002, and started a teaching assignment on that day.

On September 4, 2002, the Board of Education filed a complaint with defendant Joseph Kaczanowski, the Regional Superintendent of Schools for Suburban Cook County (Regional

~2~

Superintendent). The Board requested that the Regional Superintendent commence a hearing to suspend DuBose's teaching certificate pursuant to section 24-14 of the Illinois School Code (105 ILCS 5/24-14 (West 2002)), which provides that "no teacher may resign during the school term, without the concurrence of the board, in order to accept another teaching assignment."

The Regional Superintendent conducted a hearing on October 16, 2002. On December 5, 2002, the Regional Superintendent issued his decision to suspend DuBose's teaching certificate for one year. The Regional Superintendent determined that section 24-14 of the School Code applied to both tenured and nontenured teachers and suspended DuBose's teaching certificate for violating that section.

On December 16, 2002, DuBose filed an appeal to the State Teacher Certification Board (Certification Board) pursuant to section 21-23 of the School Code (105 ILCS 5/21-23 (West 2002)). The Certification Board advised the parties that the proceedings would be governed by appeal procedures adopted by the Certification Board on January 3, 2003, entitled "Appeal to State Teacher Certification Board," which among other things provided for the participation of the local school board.

On July 14, 2003, DuBose filed a motion to bar use of the Certification Board's procedures, alleging that the procedures were not properly adopted pursuant to the Illinois Administrative Procedure Act (5 ILCS 106/1-1 et seq. (West 2002)). DuBose

1-05-0778

requested that the Board of Education be barred from participating in the proceedings before the Certification Board. DuBose also filed a motion for a de novo hearing.

On July 16, 2003, the hearing officer for the Certification Board denied both of DuBose's motions and confirmed the school district's standing to participate in the proceedings. On July 24, 2003, defendant Robert Ingraffia, the successor to Joseph Kaczanowski as Regional Superintendent, informed the Certification Board that he had no interest in the matter and would not participate in the proceedings.

On August 7, 2003, following a hearing, the Certification Board found that section 24-14 applied to only tenured teachers and reversed the suspension of DuBose's teaching certificate.

On September 24, 2003, the Board of Education filed a complaint for administrative review of the Certification Board's determination.

On December 22, 2003, DuBose filed a motion to dismiss challenging plaintiff's standing and arguing that the Certification Board's procedures were invalid. On July 21, 2004, the trial court denied DuBose's motion to dismiss.

On February 28, 2005, the circuit court reversed the Certification Board's determination. In so doing, the court found that section 24-14 of the School Code, which prohibits teachers from resigning during the school year to take teaching jobs elsewhere, applied to both tenured and nontenured teachers.

The court noted that the Regional Superintendent conducted an evidentiary hearing and found that DuBose resigned during the school year to accept another position. The court concluded that "[a]ny other finding would be against the manifest weight of the evidence." The court upheld the determination of the Regional Superintendent suspending DuBose's teaching certificate for one year.

On appeal, DuBose contends that plaintiff lacked standing to file a complaint for administrative review; that he was entitled to a de novo hearing before the Certification Board; that the Certification Board's procedures were invalid; that the Certification Board's determination is not reviewable where it failed to make factual findings; and that section 24-14 of the School Code applies only to tenured teachers. For the following reasons, we affirm.


II. Analysis

A.  The School Board's Standing

DuBose first argues that plaintiff lacked standing to file a complaint for administrative review in this case.

The right to seek review under the Administrative Review Law (735 ILCS 5/3-101 et seq. (West 2002)) of an administrative decision is limited to parties of record whose rights, privileges, or duties are affected by the decision. Maybell v. Illinois Liquor Control Comm'n, 246 Ill. App. 3d 14, 17 (1993).

1-05-0778

We find that the Board of Education had standing to file its complaint for administrative review. As the circuit court noted, the Board of Education was an original party in the administrative hearing which was conducted on December 5, 2002. Also, the Board of Education's rights, privileges, and duties are affected by the Certification Board's determination. The Board of Education has an interest in maintaining classroom and staff stability in its schools. Contrary to DuBose's assertion that the Board of Education "gains nothing from having the teaching certificate suspended," the Board of Education has an interest in deterring teachers from resigning during the school year by the possibility of certificate suspension. Teacher resignations during a school year require the Board of Education to hire new teachers, lose negotiation leverage and disrupt the students' learning environment.

We also reject DuBose's argument that pursuant to section 21-23 of the School Code (105 ILCS 5/21-23 (West 2002)), the appropriate parties in this case are the teacher and the Regional Superintendent. Section 21-23 does not include any language that supports DuBose's contention. Rather, section 21-23 merely provides that "[w]hen a certificate is suspended, the right of appeal shall lie to the State Teacher Certification Board." 105 ILCS 5/21-23(a) (West 2002)). In addition, the Regional Superintendent was not a party of record in the original action but rather was responsible for conducting hearings and

determining whether DuBose's teaching certificate should be suspended.

B. The Certification Board's Review of the Superintendent's Determination

DuBose next contends that the Certification Board erred by denying him a de novo hearing. DuBose argues that pursuant to subsection 21-23(c) of the School Code and the Certification Board's adoption of administrative regulations, the Certification Board was required to conduct a full de novo hearing.

However, DuBose has failed to assert or prove any prejudice from the Certification Board's alleged error. In fact, the Certification Board granted the relief requested by DuBose when it overturned the suspension of DuBose's teaching certificate. As a general rule, a party cannot complain of error that does not prejudicially affect it, and one who has obtained by judgment all that has been asked for cannot appeal from the judgment. Argonaut-Midwest Insurance Co. v. E.W. Corrigan Construction Co., 338 Ill. App. 3d 423, 427 (2003), citing Geer v. Kadera, 173 Ill. 2d 398, 413-14 (1996). Accordingly, this court need not consider the merits of DuBose's contention where he has failed to show any prejudice in this case.

Even if we consider the merits of DuBose's argument, the Certification Board was not required to conduct a de novo hearing under section 21-23 of the School Code.

1-05-0778

The statute governing the suspension or revocation of teaching certificates is section 21-23 of the School Code (105 ILCS 5/21-23(a) (West 2002)), which provides, in part:

"The regional superintendent or State Superintendent of Education shall upon receipt of evidence of immorality, a condition of health detrimental to the welfare of pupils, incompetency, unprofessional conduct, the neglect of any professional duty or other just cause serve written notice to the individual and afford the individual opportunity for a hearing prior to suspension. *** No certificate shall be suspended until the teacher has an opportunity for a hearing at the educational service region. When a certificate is suspended, the right of appeal shall lie to the State Teacher Certification Board. *** Any certificate may be revoked for the same reasons as for suspension by the State Superintendent of Education. No certificate shall be revoked until the teacher has an opportunity for a hearing before the State Teacher Certification Board ***."

This court previously examined this statute and applied the rules of statutory construction to determine whether the State Superintendent of Education lacked the authority to revoke a teacher's license after the Certification Board had voted not to revoke such license. See Hunt v. Sanders, 196 Ill. App. 3d 466

(1990). This case also requires an examination of the statute and application of the rules of statutory construction.

The primary role of statutory interpretation and construction is to ascertain and effectuate the true intent and meaning of the legislature. <u>Hunt</u>, 196 Ill. App. 3d at 469, citing <u>Trigg v. Sanders</u>, 162 Ill. App. 3d 719 (1987). In interpreting a statute, the legislative language must be given its plain and ordinary meaning. If the language of the statute is clear and unambiguous and the legislative intent can be ascertained therefrom, the language must prevail and will be given effect by the courts without resorting to other aids of construction. <u>Hunt</u>, 196 Ill. App. 3d at 469.

In this case, the Regional Superintendent conducted a hearing and suspended DuBose's teaching certificate for one year. DuBose then filed an appeal to the Certification Board which reversed the suspension of DuBose's teaching certificate.

The language of the statute provides that the Regional Superintendent shall "afford the individual opportunity for a hearing prior to suspension" (105 ILCS 5/21-22(a) (West 2002)), which DuBose received in this case. The statute further states that "[w]hen a certificate is suspended, the right of appeal shall lie to the State Teacher Certification Board." 105 ILCS 5/21-22(a) (West 2002). Here, following the Regional Superintendent's determination, DuBose appealed to the Certification Board as provided by the statute. However, DuBose

argues that the Certification Board was required to conduct a <u>de novo</u> hearing rather than an appeal based on the record before it. Section 21-23(a) specifically provides that when a certificate is suspended, the right of "appeal" rests with the Certification Board; whereas when a certificate is to be revoked, the teacher must be afforded an opportunity for a "hearing" before the Certification Board. DuBose maintains that the legislature's use of the different words "hearing" and "appeal" does not necessarily indicate that the legislature contemplated two different modes of procedure, one <u>de novo</u> and one based solely on the record. DuBose argues that subsection 21-23(c) shows that the legislature intended that the Certification Board conduct more than a review of the record in cases involving certificate suspensions.

Subsection 21-23(c) provides that "[t]he State Superintendent of Education or a person designated by him shall have the power to administer oaths to witnesses at *any hearing conducted before the State Teacher Certification Board* pursuant to this Section." (Emphasis added.) 105 ILCS 5/21-23(c) (West 2002). Subsection 21-23(c) also provides that the State Superintendent, or his designee, may subpoena witnesses, administer oaths to witnesses and take testimony orally or by depositions before the Certification Board.

DuBose argues that none of the procedures set forth in subsection 21-23(c) are relevant if the Certification Board

merely reviews the record before it.  However, the legislature provided in subsection 21-23(a) that no teaching certificate shall be *revoked* for the reasons in that subsection until the teacher has an opportunity for a "hearing" before the Certification Board.  Similarly, in subsection 21-23(b), the legislature provided that "[t]he State Superintendent may revoke any certificate upon proof at hearing by clear and convincing evidence that the certificate holder has caused a child to be an abused or neglected child as defined by the Abused and Neglected Child Reporting Act."  105 ILCS 5/21-23(b) (West 2002).  The legislature again stated in subsection 21-23(b) that "[n]o certificate shall be *revoked* until the teacher has an opportunity for a hearing before the State Teacher Certification Board." (Emphasis added.)  105 ILCS 5/21-23(b) (West 2002).  Accordingly, we find that the procedures set forth in subsection 21-23(c), which apply to "any hearing conducted before the State Teacher Certification Board," refer to the "hearings" provided for teachers before the Certification Board when a certificate is to be revoked; rather than the "appeals" to the Certification Board after a certificate suspension.

Defendant further argues that the Certification Board's adoption of rules under the Illinois Administrative Code (Code) (See 23 Ill. Adm. Code §§475.10 through 475.100 29 Ill. Reg. 10146 (eff. June 30, 2005)) requires the Board to conduct de novo hearings in all cases before it under section 21-23 of the School

Code. However, the procedures set forth in the Code apply only to "administrative hearings" rather than "appeals" to the Certification Board from the suspension of a teaching certificate. The Certification Board's adoption of rules for "hearings" under the Code does not preclude its ability to conduct "appeals" solely upon the record. Section 21-23 of the School Code provides a separate procedure for suspension of a certificate, providing a teacher with a hearing before the Regional Superintendent and an appeal to the Certification Board.

### C. The Certification Board's Procedures

DuBose next contends that this court should invalidate the Certification Board's procedures, entitled "Appeal to State Teacher Certification Board," because they are "rules" that were not adopted in accordance with the Illinois Administrative Procedure Act (Act) (5 ILCS 100/5-5 (West 2002)). Defendant argues that these procedures prejudiced him because they prevented him from receiving a de novo hearing before the Certification Board and permitted the Board of Education to participate in the proceedings.

However, DuBose has failed to show any prejudice from the Certification Board's alleged error. As previously discussed, DuBose was not entitled to a de novo hearing under section 21-23 of the School Code (105 ILCS 5/21-23 (West 2002)), and the Board of Education was a proper party to participate in the

1-05-0778

proceedings.  In addition, the Certification Board granted the relief requested by DuBose when it overturned the suspension of DuBose's teaching certificate.  DuBose cannot complain of error that does not prejudicially affect him and where the Certification Board granted him the relief that he requested. Argonaut-Midwest Insurance Co., 338 Ill. App. 3d at 427. Furthermore, issues that are not essential to a disposition of the cause or where the result will not be affected regardless of the determination of the issue will not be considered by a reviewing court.  R.L. Polk & Co. v. Ryan, 296 Ill. App. 3d 132, 136 (1998); Argonaut-Midwest Insurance Co., 338 Ill. App. 3d at 428.  Even if this court construed the Certification Board's procedures as a "rule" within the Act and found that the Certification Board failed to follow statutory procedures, that determination would not impact the present case.  Accordingly, we need not consider DuBose's contention.

In addition, DuBose's request for attorney fees is denied. DuBose notes that pursuant to the Act, "[i]n any case in which a party has any administrative rule invalidated by a court for any reason, *** the court shall award *** reasonable attorney's fees."  5 ILCS 100/10-55(c) (West 2002).  However, since this court need not determine the validity of the Certification Board's procedures, attorney fees are not warranted in this case.

D.  DuBose's Claim That This Cause Must Be Remanded to the

### Certification Board for Factual Findings

DuBose next claims that the circuit court's determination must be reversed and remanded to the Certification Board because it failed to make factual findings in this case.  DuBose argues that the Certification Board was required to make such findings pursuant to section 10-50(a) of the Administrative Procedure Act.

Section 10-50(a) of the Act provides in pertinent part:

"A final decision or order adverse to a party (other than the agency) in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings."  5 ILCS 100/10-50(a) (West 2002).

Section 475.100 of the Administrative Code (23 Ill. Adm. Code § 475.100 29 Ill. Reg. 10146 (eff. June 30, 2005)) ("Contested Cases and Other Formal Hearings") provides:

"The hearing officer's findings and conclusions shall be in writing and shall include findings of fact and conclusions of law separately stated and in conformance with Section 10-50(a) of the Illinois Administrative Procedure Act [(5 ILCS 100/10-50(a))]."

We therefore find that the Administrative Procedure Act does

not require that the Certification Board's determination contain factual findings. Rather, the requirement in this case applies to the Regional Superintendent, who conducted the hearing, not the Certification Board, which reviewed DuBose's appeal.

Moreover, the factual findings in this case were sufficient to permit judicial review. The purpose of an agency's findings in an administrative proceeding is to permit orderly and efficient judicial review. O'Neill v. Rodriguez, 298 Ill. App. 3d 897, 902-03 (1998). Where an agency's findings are sufficient to permit the reviewing court to make an intelligent decision, the standard is met. O'Neill, 298 Ill. App. 3d at 903. Where the testimony before the administrative agency is preserved for review in the record, specific findings of fact by the agency are not necessary for judicial review. O'Neill, 298 Ill. App. 3d at 903.

The record shows that the Regional Superintendent determined that section 24-14 applied to both tenured and nontenured teachers and suspended DuBose's teaching certificate for violating that section. On appeal, the Certification Board interpreted section 24-14 and determined that the statute was not applicable to DuBose. As a result, the Certification Board noted that it need not decide whether DuBose violated the statute.

The evidence regarding DuBose's violation of section 24-14 is preserved in the record for review by the court where a transcript of the hearing before the Regional Superintendent is

included in the record.  The factual findings in this case were sufficient to permit orderly judicial review.  In fact, the circuit court adopted the Regional Superintendent's factual findings that DuBose resigned during the school year to accept another teaching position and determined that any other finding would be against the manifest weight of evidence in the record. Therefore, we find that reversal of the circuit court's decision is not warranted on this basis.


E. Section 24-14 of the School Code

DuBose lastly contends that the circuit court erred in construing section 24-14 of the School Code as applying to both tenured and nontenured teachers.

Section 24-14 of the School Code provides:

"Termination of contractual continued service by teacher.  A teacher who has entered into contractual continued service may resign at any time by obtaining concurrence of the board or by serving at least 30 days' written notice upon the secretary of the board. However, no teacher may resign during the school term, without the concurrence of the board, in order to accept another teaching assignment.  Any teacher terminating said service not in accordance with this Section is guilty of unprofessional conduct and liable to suspension of certificate for a period not to exceed

1-05-0778

1 year, as provided in Section 21-23."  105 ILCS 5/24-14 (West 2002).

We are asked to determine whether the second sentence of this statute applies to both tenured and nontenured teachers. The construction of a statute is a question of law, and this court's standard of review is de novo. Quad Cities Open, Inc. v. City of Silvis, 208 Ill. 2d 498, 508 (2004).  Long-standing principles of statutory construction dictate that this court give effect to the intention of the legislature. Quad Cities Open, Inc., 208 Ill. 2d at 508.  When the language of a statute is clear and unambiguous, a court must give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construction. People v. Glisson, 202 Ill. 2d 499, 504-05 (2002).  Ambiguity exists when a statute is capable of being understood in two or more ways by reasonably well-informed people. In re B.C., 176 Ill. 2d 536, 543 (1997).

We find that section 24-14 is not clear or unambiguous. Rather, as demonstrated by the Certification Board and the Regional Superintendent and trial court, the statute is susceptible to two conflicting interpretations.  The first sentence of section 24-14 permits only "[a] teacher who has entered into contractual continued service" (tenure) to resign at any time with the school board's concurrence or 30 days' written notice.  (105 ILCS 5/24/-14 (West 2002)) The second sentence provides that "no teacher may resign during the school term,

without the concurrence of the board, in order to accept another teaching assignment."  105 ILCS 5/24-14 (West 2002).  The second sentence prohibits "all teachers" from resigning during the school year to accept another teaching position.  The meaning of that sentence becomes ambiguous when it is read in conjunction with the first sentence.  Reasonably well-informed people can read the second sentence literally as applying to all teachers, as the Regional Superintendent and trial court determined, or can infer that it applies to only tenured teachers, as the Certification Board found.

In resolving this statutory ambiguity, this court must apply rules of statutory construction.  One rule of statutory construction provides that when a particular provision appears in a statute, the failure to provide the same provision later in the statute will be deemed to have been intended by the legislature.  Nolan v. Hillard, 309 Ill. App. 3d 129, 144 (1999); Siciliano v. Village of Westchester Firefighters' Pension Fund, 202 Ill. App. 3d 964, 967 (1990).  Similarly, the legislature intended different results where it uses certain words in one instance and different words in another.  Chicago SMSA Ltd. Partnership v. Department of Revenue, 306 Ill. App. 3d 977, 983 (1999).  The first sentence of section 24-14 qualifies teachers as those who have "entered into contractual continued service."  The second sentence contains no such qualification but only uses the term "teacher."  Therefore, the failure to limit teachers in the

second sentence to those who have "entered into contractual continued service" must have been intended.

In addition, because the second sentence is ambiguous, it is appropriate to examine the legislative history of section 24-14. Franklin v. Cernovich, 287 Ill. App. 3d 776, 780 (1997). The sentence in question was added to section 24-14 by Public Act 83-710 (Pub. Act 83-710, eff. September 23, 1983), which originated as House Bill 427 (83d Ill. Gen. Assem., House Bill 427, 1983 Sess.). The legislative minutes show that the language was not originally part of House Bill 427 but was added out of concern for teachers leaving during the school year for positions at other schools and their prior schools being unable to find qualified replacements. The legislature explained its concerns as follows:

> "SENATOR COLLINS:*** I think the amendment, it is my
> understanding, took care of most of my concerns and
> that was allowing a district or a school to be without
> a specific teacher in a... in an area where there was
> the scarcity of teachers... of qualified teachers with
> the same skills. It is my understanding that the
> amendment would mandate that the teacher remain until
> such time they find a replacement. In addition to
> that, that she could not leave for the sole purpose of
> taking another job. *** I think the way the bill has
> been amended, it satisfies their problems and it offers

adequate protection to the school districts where there may be a scarcity of teacher[s] in the particular... teaching that particular subject matter, and I support the bill."  83D Ill. Gen. Assem., Senate Proceedings, June 21, 1983, at 172 (statements of Senator Collins). "Nelson: *** [T]his is the bill that would allow teachers to break their contracts.  Many of us know that in other kinds of sectors people who sign contracts are expected to fulfill them, and if a teacher can resign during the school year, it makes it very, very difficult for a board of education to find a good replacement in time."  83d Ill. Gen. Assem., House Proceedings, June 28, 1983, at 23 (statements of Representative Nelson).

The legislative history of section 24-14 demonstrates that the legislature was concerned with school districts being unable to replace teachers who resign during the school year to take teaching positions elsewhere.  DuBose argues that the legislature expressed no opinion on whether the amendment applied to nontenured teachers.  However, there was no need for the legislatures to distinguish between teachers and non-tenured teachers.  School districts and their students suffer the same consequences when teachers leave during the school year and cannot be replaced with teachers qualified to teach the same subject matter, whether the departed teachers are tenured or

1-05-0778

nontenured.

     Furthermore, a comparison of the previous version of section
24-14 shows that the legislature intended for the second sentence
to apply to "all teachers."  The first sentence of the earlier
version of section 24-14 began with language referring to tenured
teachers and prohibited teachers from resigning at any time from
60 days before the start of the school year through the end of
the school year.  The second sentence began with the same
language regarding tenured teachers and prohibited teachers from
resigning at any other time without serving written notice on the
board secretary.  Public Act 83-710 changed the order of the
sentences.  The first sentence still begins with the language
regarding tenured teachers and allows such teachers to resign at
any time with the concurrence of the board or by giving 30 days'
written notice.  The second sentence prohibits <u>any</u> teachers from
resigning during the school year to accept other teaching
positions.  Unlike both sentences in the prior version of section
24-14, and the first sentence in Public Act 83-710, the second
sentence makes no reference to tenured teachers.  In light of the
previous use of that language in both sentences, and its use
again in the first sentence, the omission of that language from
the second sentence must have been intentional.  Accordingly, we
find that the prohibition on resigning during the school year to
take another teaching position provided in section 24-14 applies
to both tenured and nontenured teachers.

˘21˘

1-05-0778

DuBose argues that the title of section 24-14, "Termination of Contractual Continued Service By Teacher," should be used to assist this court in interpreting the scope of the statute. However, such a title is considered only as a short-hand reference to the general subject matter involved and cannot limit the plain meaning of the text. Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 505-06 (2000). In addition, no other section of the School Code discusses teacher resignation, whether by tenured or nontenured teachers. If we accepted DuBose's contention that only tenured teachers are prohibited from resigning during the school year to accept another teaching position, there would be no limit on nontenured teachers. They would be able to resign anytime, even during the school year. We find that there is no reason the legislature would make such a distinction when it was concerned that schools would not be able to replace teachers who resign during the school year.

### III. Conclusion

For the above-stated reasons, we affirm the judgment of the circuit court.

CAMPBELL and GREIMAN, JJ., concur.

1-05-0778