2025 IL App (1st) 242299-U

FIRST DIVISION
November 10, 2025

No. 1-24-2299

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ALEXIS ROBINSON, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 24M1011763 |
| v. | ) | |
| | ) | |
| MORRIS EDELMAN, | ) | Honorable |
| | ) | Loveleen K. Ahuja, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the judgment of the circuit court. Defendant has failed to show that the trial court committed any reversible error when it entered judgment for the plaintiff.

¶ 2    Plaintiff filed a complaint against defendant, her landlord, in small claims court to recover the cost of furniture that she alleged had to be discarded due to a bedbug infestation. Both parties were self-represented. The trial court awarded plaintiff $1,650, which it explained was half the cost of the furniture. Defendant appeals the circuit court's judgment arguing that plaintiff failed to comply with the Chicago Municipal Code's requirement that a tenant notify a landlord, in writing, within five days of a bedbug infestation. Defendant also argues that plaintiff failed to mitigate her damages when she threw away the furniture before giving him notice, and

he argues that the trial court erred when it determined the amount of damages to be awarded. Finding no reversible error, we affirm.

¶ 3                                    BACKGROUND

¶ 4      Plaintiff Alexis Robinson is a tenant at an apartment building located at 6221 N. Whipple Street in Chicago. Defendant Morris Edelman is the owner of the apartment building and is plaintiff's landlord. Plaintiff filed a complaint in small claims court alleging that she and her three children moved into the subject apartment in November 2020.

¶ 5      Defendant filed a motion to strike plaintiff's complaint. Defendant argued in his motion that plaintiff's complaint "consists of one long, unnumbered, rambling paragraph." The trial court indicated in open court that the motion to strike was denied, and the trial court eventually entered an order clarifying that defendant's motion to strike was denied on July 26, 2024.

¶ 6      The case proceeded to a trial on October 21, 2024. After hearing from the parties, the trial court awarded $1,650.00 to plaintiff. Defendant filed this appeal.

¶ 7      No transcript of the trial proceedings is included in the record on appeal, but defendant submitted a bystander's report which was certified by the trial court. In the bystander's report, the trial court certified a version of the events submitted by defendant describing what occurred during the proceedings. The bystander's report describes the parties' presentations to the court. According to the bystander's report, plaintiff stated at trial that she moved into the subject apartment in November 2020. Plaintiff's initial encounter with bedbugs was in April 2021 when plaintiff saw a dead bedbug on the steps of the back staircase. No further bedbug sightings were reported by plaintiff until February 2024 when she and her children began developing welts and sores, which plaintiff attributed to a bedbug infestation. Towards the end of February 2024, the

situation deteriorated to the point that plaintiff made the decision to discard most of her furniture which she believed was necessary at the time to resolve the problem.

¶ 8 The bystander's report goes on to address some of the arguments made by defendant during the trial, including that defendant raised plaintiff's alleged violation of City Ordinance 7-28-250 which he quoted to the trial court. The ordinance states that a tenant is required to notify the landlord, in writing, within five days after a tenant finds or reasonably suspects a bedbug infestation. The bystander's report indicates that defendant stated at trial that the first time he became aware of the alleged infestation in plaintiff's unit was when he heard the noise of plaintiff removing the furniture from her apartment. According to the bystander's report defendant said at trial that he had no idea about the bedbugs prior to hearing the plaintiff moving furniture because plaintiff did not tell him. As soon as he became aware of the issue, he immediately called a pest control inspector.

¶ 9 The bystander's report then moves on to address the trial court's ruling. The report does not include any specific factual findings made by the trial court or any credibility determinations made by the court after hearing from the parties. The bystander's report indicates that the trial judge explained to the parties that both tenants and landlords have responsibilities toward each other. Based on the evidence and arguments it heard, the trial court concluded it was appropriate to split the cost of the furniture between the parties, awarding plaintiff $1,650 which was half of the cost of the furniture for which plaintiff paid $3,300.

¶ 10 ANALYSIS

¶ 11 On appeal, defendant argues that plaintiff was in "clear violation" of City Ordinances 5-12-040(a) and 7-28-850. Defendant argues that it is an undisputed fact that he only became aware of the bedbug infestation when he heard plaintiff removing the furniture from her

apartment. He claims he was never informed by plaintiff of the problem and that, as soon as he learned of the issue, he contacted a bedbug control professional to inspect the apartment. Defendant contends that the evidence at trial, including a report submitted by the exterminator, showed there was a very mild case of bedbugs and not a major infestation that would have justified the plaintiff's decision to throw away all of the furniture in her apartment.

¶ 12    In section 5-12-040(a) of the Chicago Municipal Code, in the section titled "Tenant Responsibilities," it states that every tenant must "[c]omply with all obligations imposed specifically upon tenants by provisions of the municipal code applicable to dwelling units, including Section 7-28-850." Chicago Municipal Code § 5-12-040(a) (added September 8, 1986) (West 2022). Section 7-28-850 is located in Article VIII of the Municipal Code which is titled "Bed Bugs." Section 7-28-850 pertains to the responsibilities of a tenant with regard to bedbugs.

> "Within 5 days after a tenant finds or reasonably suspects a bed bug infestation in the presence of the tenant's dwelling unit, the tenant shall notify, in writing, the landlord of any known or reasonably suspected bed bug infestation in the presence of the tenant's dwelling unit, clothing, furniture or other personal property located in the building, or of any recurring or unexplained bites, stings, irritation, or sores of the skin or body which the tenant reasonably suspects is caused by bed bugs." Chicago Municipal Code § 7-28-850(a) (added June 5, 2013) (West 2022).

¶ 13    Referring to section 7-28-850 of the Municipal Code, defendant argues that, because a tenant is required to notify the landlord of a bedbug infestation within 5 days, if a tenant does not so notify the landlord, "then the property owner should not be liable at all." Defendant contends that it is undisputed that plaintiff did not notify him of the infestation before discarding her

furniture in clear violation of the ordinances and, therefore, he should not be liable. Thus, defendant contends that the trial court erred when it held him to be liable for 50% of the cost of the loss of plaintiff's furniture.

¶ 14    Defendant's argument, that a plaintiff's failure to notify a landlord of a bedbug infestation within five days is an absolute bar to a plaintiff recovering for the property lost due to the infestation, is not supported by the Chicago Municipal Code. No Illinois cases have ever interpreted this section of the Municipal Code.  However, we note the absence of any punitive language in the ordinance for failure of a tenant to comply with the five-day requirement, therefore we conclude that the interpretation offered by defendant is too absolute and inflexible to be considered reasonable and that it would not carry out the purpose intended by the legislature in passing this ordinance.

¶ 15    It is true that the responsibility of the tenant to notify the landlord of a bedbug infestation within five days is mandatory. See Chicago Municipal Code § 1-4-100 (added June 27, 1990) ("[t]he word 'shall' as used in this code is mandatory."). Nevertheless, the Municipal Code is silent as to the consequence for a tenant's noncompliance with this provision. Section 7-28-900 of the Article addressing bedbugs, titled "Penalties," is the only part of the Article discussing recourse for a violation of the bedbug-directed ordinances. The penalties section includes the assessment of fines against any person violating the Article but includes no bar to the award of civil damages. Meanwhile, for example, in another provision of this same ordinance, the legislature specifically addresses the effect of a violation of the ordinance in a civil proceeding. See Chicago Municipal Code § 7-28-850(e) (added June 5, 2013) (West 2022) ("If the landlord acts in violation of this subsection (e), the tenant has a defense in any retaliatory action against him for possession and is entitled to recover possession of the rental unit or terminate the rental

agreement and, in either case, may recover an amount equal to two months rent or twice the damages sustained by him, whichever is greater, and reasonable attorneys' fees."). There is no indication the legislature intended a tenant's failure to strictly comply with the notice provision to constitute a complete bar to a tenant recovering damages for any ensuing losses.

¶ 16    Municipal ordinances are interpreted under the rules of statutory construction and interpretation. *Puss N Boots, Inc. v. Mayor's License Comm'n of City of Chicago*, 232 Ill. App. 3d 984, 986 (1992). Our primary goal in statutory construction is to effectuate the intent of the legislature. *Insura Property & Casualty Co. v. Steele*, 344 Ill. App. 3d 466, 469 (2003). The best evidence of legislative intent may be found in the words of the statute itself. *Id*. Courts may not, under the guise of statutory interpretation, create new rights or limitations not suggested by the language of the statute. *Trigg v. Sanders,* 162 Ill. App. 3d 719, 727 (1987). A court cannot read words into a statute that are not within the intention of the legislature, nor can a court restrict or enlarge the meaning of a statute. *Id*.

¶ 17    Under the applicable rules for construing a municipal ordinance, we decline to hold that a tenant's failure to notify a landlord of a bedbug infestation in writing within five days constitutes an absolute bar to a plaintiff recovering damages for a loss of property due to the infestation.

¶ 18    In this case, there was evidence at trial that plaintiff contacted defendant about a potential bedbug issue in the building shortly after moving into her unit. There is no evidence that defendant took any action to inspect plaintiff's unit, and it was alleged that defendant assured plaintiff there was no issue with bedbugs. However, there was evidence at trial that there *was* a bedbug issue in the building, with plaintiff's downstairs neighbor having an infestation in the months prior which caused the neighbors to discard their furniture too. "In any multiple rental unit building in which an infestation of bed bugs is found or reasonably suspected, it is the

responsibility of the landlord to [] provide pest control services by a pest management professional until such time that no evidence of bed bugs can be found and verified within the building or portion thereof, including the individual rental units ***." Chicago Municipal Code § 7-28-830(b) (added June 5, 2013) (West 2022).

¶ 19    Regardless of the application of the Municipal Code to plaintiff's claim, the record on appeal is insufficient for us to accept defendant's arguments. In particular, the bystander's report is phrased solely in terms of what the parties argued to the trial court followed by the court's conclusion. The bystander's report does not include any of the factual findings that would be necessary to endorse defendant's arguments. As appellant, defendant has the burden of presenting a sufficiently complete record of the proceedings at trial to support a claim of error. *Midstate Siding & Window Co., Inc. v. Rogers,* 204 Ill. 2d 314, 319 (2003). When the record on appeal is incomplete, the reviewing court must apply every possible presumption favoring the trial court's judgment, including that the proceedings were regular and fair, and that the trial court ruled correctly in accordance with the law and with a sufficient factual basis. *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 757 (2006).

¶ 20    In the absence of a sufficient record on appeal, we must presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *In re Marriage of Gabriel & Shamoun*, 2020 IL App (1st) 182710, ¶ 51. It is possible the trial court found plaintiff to be credible and found defendant to not be credible before finding that plaintiff carried her burden to show an entitlement to relief.

¶ 21    Defendant also argues that plaintiff had a duty to mitigate her damages and that there is no basis in the record for the judge's chosen amount of damages. Where a trial court makes an award of damages following a bench trial, the standard of review is whether the trial court's

judgment is against the manifest weight of the evidence. *2460-68 Clark, LLC v. Chopo Chicken, LLC*, 2022 IL App (1st) 210119, ¶ 28. A judgment is against the manifest weight of the evidence only if the opposite conclusion is clear or where the trial court's findings appear to be unreasonable, arbitrary, or not based on evidence. *Id*. And when the record on appeal is incomplete, a reviewing court should indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including that the trial court ruled or acted correctly. *Moenning v. Union Pacific Railroad Co.*, 2012 IL App (1st) 101866, ¶ 38.

¶ 22     Like defendant's arguments above, there is nothing in the record to demonstrate reversible error on the issue of damages. We do not know what evidence plaintiff submitted to cause the trial court to determine that the price of the furniture was $3,300. But in the absence of any showing to the contrary, we must presume that the trial court based its conclusion on relevant evidence. The trial court stated its conclusion that it found the total cost of the furniture to be $3,300 and awarded plaintiff half of that amount. Defendant has provided no basis for disturbing that conclusion.

¶ 23     Similarly, the evidence defendant relies upon to argue there was a lack of mitigation of damages is the fact that plaintiff threw out her furniture before giving him the opportunity to have the apartment treated for bedbugs. There is no indication defendant specifically raised this lack of mitigation of damages argument during trial, as it appears from the record that his presentation at trial was aimed at showing he lacked any legal liability. See *Village of Lake Villa v. Stokovich,* 211 Ill. 2d 106, 121 (2004) (issues not raised in the trial court may not be raised for the first time on appeal). Even so, it is possible that the trial judge considered plaintiff's actions to be partially objectionable when the judge decided plaintiff would be awarded only half the cost of the furniture. In sum, there is nothing in the record that demonstrates the trial court's

award of damages is against the manifest weight of the evidence. See *2460-68 Clark, LLC*, 2022

IL App (1st) 210119, ¶ 28. Defendant has failed to demonstrate that the trial court committed

reversible error, and we find no basis for disturbing the trial court's judgment.[1]

¶ 24                                        CONCLUSION

¶ 25    Accordingly, we affirm.

¶ 26    Affirmed.

---

[1] In his reply brief, defendant argues that we erred in allowing plaintiff to file her response brief after she missed the deadline for filing it. Defendant also argues that we erred when we granted plaintiff leave to file her brief before the time for him to file a response to her motion for an extension had expired (citing Ill. S. Ct. R. 361(b)(3) (eff. April 15, 2024) (West 2024)). Finally, defendant argues that plaintiff's response brief violates the Supreme Court Rule governing the content of briefs and, therefore, should be disregarded. We need not address defendant's arguments about the shortcomings or untimeliness of plaintiff's brief because our decision is based on the inadequacy of the record on appeal and defendant's incorrect position on a question of law, not on any issue disputed by the parties in their briefs. The result in this case would be the same without any reference to plaintiff's response brief. Accordingly, we reject defendant's arguments on these points.